Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/25/2022 01:05 AM CST

State of Nebraska, appellee, v.
Christina M. Greer, appellant.
___ N.W.2d ___

Filed September 2, 2022.    No. S-21-601.

1. **Jury Instructions: Appeal and Error.** Whether a jury instruction is correct is a question of law, regarding which an appellate court is obligated to reach a conclusion independent of the determination reached by the trial court.

2. **Trial: Expert Witnesses: Appeal and Error.** An appellate court reviews the record de novo to determine whether a trial court has abdicated its gatekeeping function when admitting expert testimony.

3. ____: ____: ____. When the trial court has not abdicated its gatekeeping function when admitting expert testimony, an appellate court reviews the trial court's decision to admit or exclude the evidence for an abuse of discretion.

4. **Sentences: Appeal and Error.** A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court.

5. **Judges: Words and Phrases.** A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition.

6. **Jury Instructions: Appeal and Error.** Jury instructions are subject to harmless error review, and an erroneous jury instruction requires reversal only if the error adversely affects the substantial rights of the complaining party.

7. **Jury Instructions: Proof: Appeal and Error.** In an appeal based upon a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant.

8. **Rules of Evidence: Expert Witnesses.** Four preliminary questions must be answered in order to determine whether an expert's testimony is admissible: (1) whether the witness qualifies as an expert pursuant to Neb. Rev. Stat. § 27-702 (Reissue 2016); (2) whether the expert's testimony is relevant; (3) whether the expert's testimony will assist the trier of fact to understand the evidence or determine a controverted factual issue; and (4) whether the expert's testimony, even though relevant and admissible, should be excluded in light of Neb. Rev. Stat. § 27-403 (Reissue 2016) because its probative value is substantially outweighed by the danger of unfair prejudice or other considerations.

9. **Trial: Expert Witnesses.** A trial court acts as a gatekeeper to ensure the evidentiary relevance and reliability of an expert's opinion, and this gatekeeping function entails a preliminary assessment whether the reasoning or methodology underlying the testimony is valid and whether that reasoning or methodology properly can be applied to the facts in issue.

10. ____: ____. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), does not create a special analysis for answering questions about the admissibility of all expert testimony. Not every attack on expert testimony amounts to a *Daubert* claim. If a witness is not offering opinion testimony, that witness' testimony is not subject to inquiry pursuant to *Daubert*.

11. **Sentences: Appeal and Error.** When sentences imposed within statutory limits are alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering well-established factors and any applicable legal principles.

12. **Judges: Words and Phrases.** A judicial abuse of discretion exists only when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

13. **Sentences.** When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime.

14. ____. The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations

of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

15. ____. It is within the discretion of the trial court to direct that sentences imposed for separate crimes be served consecutively. The test of whether consecutive sentences may be imposed under two or more counts charging separate offenses, arising out of the same transaction or the same chain of events, is whether the offense charged in one count involves any different elements than an offense charged in another count. The test is whether some additional evidence is required to prove one of the other offenses.

Appeal from the District Court for Sarpy County: George A. Thompson, Judge. Affirmed.

Thomas P. Strigenz, Sarpy County Public Defender, for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Heavican, C.J.

## INTRODUCTION

The defendant, Christina M. Greer, was charged with 13 counts in four separate cases, all relating to allegations of sexual assault of a child. Greer was convicted of 11 of those counts and sentenced to an aggregate sentence of 64 to 102 years' imprisonment. Greer appeals. We affirm.

## BACKGROUND

*Charges Against Greer.*

Greer was charged in four separate cases. In the first case, she was originally charged with one count of first degree sexual assault of W.F. (also known as A.F.), a 13-year-old boy who was friends with Greer's 11-year-old daughter. That charge was

later amended to one count of first degree sexual assault of a child and two counts of witness tampering.

In the second case, Greer was charged with three counts of first degree sexual assault of a child, J.H., a 13-year-old boy who was friends with Greer's 9-year-old son. In the third case, Greer was charged with six counts of intentional child abuse of A.F. and J.H.; of Greer's daughter; and of A.R., A.J., and C.P., identified as friends of Greer's daughter. In the fourth case, Greer was charged with child enticement of P.M., a 13-year-old boy who attended school with Greer's daughter.

These four cases were consolidated for trial on January 21, 2021.

*Pretrial Motions.*

Greer was first charged in March 2018, but did not come to trial until March 2, 2021. Since that time, Greer has had three attorneys: appointed counsel; retained counsel; and at trial, the Sarpy County public defender, who was appointed on April 2, 2020, and represents Greer in this appeal.

As relevant to this appeal, the primary reason for the delay in Greer's trial was various motions filed by the State under Neb. Rev. Stat. § 27-404 (Reissue 2016) (other bad acts) and Neb. Rev. Stat. § 27-414 (Reissue 2016) (prior sexual conduct). Generally, the State sought to introduce evidence that Greer (1) had engaged in uncharged sex acts with other children, (2) had engaged in uncharged sex acts with already identified victims, and (3) was "grooming" the children through the supplying of alcohol and marijuana edibles. In support of its contention that evidence relating to Greer's grooming of children who came to her home, the State offered the testimony of Colleen Brazil*,* the forensic interview program manager at a child advocacy center.

The first such motion regarding §§ 27-404 and 27-414 was filed on December 26, 2018. At a hearing on February 7, 2019, Brazil testified about the concept of "grooming" and the behaviors it encompasses. Greer's daughter and J.H. testified about

Greer's conduct in the cases wherein each was a named victim. The State's motion was granted on March 1.

On August 6, 2019, Greer sought a motion in limine to prevent the State from mentioning or using the term "grooming" without the court's permission, as it was a "term of art that requires expert testimony." On August 7, the district court granted the State's motion to continue and noted that it would take up the motions in limine at a later hearing. The district court held a hearing on Greer's motions in limine on March 3, 2020, and denied the motions, noting that it had addressed the issue in various § 27-404 hearings.

*Brazil's Testimony.*

Trial began on March 2, 2021. On March 3, Greer filed a motion seeking an order to strike Brazil as an expert witness, as well as to strike her testimony regarding grooming, because such theories violated standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,[1] and *Schafersman v. Agland Coop.*[2]

The State called Brazil to testify on March 4, 2021. Greer objected when the State asked Brazil if she was familiar with the term "grooming." The district court initially indicated that "grooming" was not an appropriate topic for a *Daubert* hearing and that Brazil was an expert in the field of child advocacy. But the district court ultimately agreed to hold a *Daubert* hearing.

At that hearing, Brazil once again testified on the concept of grooming. Brazil also testified that she knew very little about the facts of Greer's case and that she would not offer an opinion as to whether Greer's alleged victims were, in fact, groomed by Greer. The State also offered three court opinions and an article about grooming.

---

[1] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

[2] *Schafersman v. Agland Coop*, 262 Neb. 215, 631 N.W.2d 862 (2001).

In ruling for the State, the court indicated that it did not think *Daubert* should apply, but that the Nebraska Court of Appeals' opinion in *State v. Edwards*[3] held that *Daubert* did apply. The district court explicitly noted it believed that the difference between the *Edwards* case and Greer's situation was based on the fact that the expert in *Edwards* specifically opined that the defendant in that case had engaged in grooming. The district court found that Brazil was an expert and allowed her to testify, but noted that the State should not stray into questions about whether Greer's actions amounted to grooming.

When Greer's counsel sought to clarify the grounds of the court's ruling, the court explained that it was ruling that Brazil was a qualified expert, that grooming was part of her expertise, that there was sufficient peer review on the topic of grooming, and that the evidence was more probative than prejudicial, but that it also believed *Daubert* did not apply because Brazil was not opining on whether Greer's conduct amounted to grooming. Brazil then testified at trial, subject to Greer's continuing objection.

The jury ultimately found Greer guilty of counts 1 through 3 and 5 through 12, and not guilty of counts 4 (sexual assault of a child) and 13 (child enticement). Greer was sentenced to a total of 64 to 102 years' imprisonment, or 25 to 40 years' for the three counts of first degree sexual assault of a child, 2 to 3 years' imprisonment on the six counts of child abuse, and 1 to 2 years' imprisonment on the two counts of witness tampering. The sentences were ordered to be served consecutively, except that the 25-to-40-year sentence on count 6 was ordered to run concurrent to Greer's other sentences.

*Jury Instructions.*

Prior to closing arguments, the district court instructed the jury, then took a brief recess. After the recess, the jury was

---

[3] *State v. Edwards*, 28 Neb. App. 893, 949 N.W.2d 799 (2020).

informed that instruction No. 4, the definition of the term "penetration," while taken from the Nebraska pattern jury instructions,[4] was incomplete. As such, over Greer's objection, the instruction was revised to mirror the pattern instruction and was read again to the jury.

Greer appeals from her convictions and sentences.

## ASSIGNMENTS OF ERROR

Greer assigns, restated, that the district court erred in (1) the procedure utilized in instructing the jury as to the definitions included in instruction No. 4, specifically of the term "penetration"; (2) allowing Brazil to testify as an expert on the issue of grooming; and (3) imposing excessive sentences.

## STANDARD OF REVIEW

[1] Whether a jury instruction is correct is a question of law, regarding which an appellate court is obligated to reach a conclusion independent of the determination reached by the trial court.[5]

[2,3] An appellate court reviews the record de novo to determine whether a trial court has abdicated its gatekeeping function when admitting expert testimony.[6] When the trial court has not abdicated its gatekeeping function, an appellate court reviews the trial court's decision to admit or exclude the evidence for an abuse of discretion.[7]

[4,5] A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court.[8] A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a

---

[4] NJI2d Crim. 4.6.

[5] *State v. Pope*, 305 Neb. 912, 943 N.W.2d 294 (2020).

[6] See *Hemsley v. Langdon*, 299 Neb. 464, 909 N.W.2d 59 (2018).

[7] See *id.*

[8] *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022).

substantial right and denying a just result in matters submitted for disposition.[9]

## ANALYSIS

*Jury Instructions.*

Greer first assigns that the district court erred in instructing the jury when it initially read an incomplete version of instruction No. 4, then later read the complete version of that same instruction. Greer asserts that the second reading of that particular instruction, which included the definition of the term "penetration," was prejudicial to her because it emphasized penetration to the jury in a case where she had strongly denied committing an act of penetration. Greer suggests that at a minimum, the district court ought to have read again all instructions in order to de-emphasize any one instruction.

[6,7] Jury instructions are subject to harmless error review, and an erroneous jury instruction requires reversal only if the error adversely affects the substantial rights of the complaining party.[10] In an appeal based upon a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant.[11]

We find Greer's arguments on appeal unpersuasive. We first observe that the only instruction in our record relevant to this assignment of error is the complete instruction No. 4, read to the jury upon the court's realization that the initial instruction No. 4 was incomplete and later sent back with the jury for its use during deliberations. Greer had the burden to show that she was prejudiced by the court's giving of the original instruction. Yet Greer has provided no record of what that initial, incomplete instruction contained. We cannot determine whether Greer was prejudiced by the second

---

[9] *Id.*

[10] *State v. Dady*, 304 Neb. 649, 936 N.W.2d 486 (2019).

[11] *State v. Bao*, 263 Neb. 439, 640 N.W.2d 405 (2002).

reading of the instruction if we do not know the full contents of the first instruction.

And even if we could proceed based on our limited knowledge of the contents of the incomplete instruction, we would still conclude that Greer has failed to meet her burden to show that the instruction procedure followed was prejudicial. First, the cases upon which Greer relies—*State v. Abram*[12] and *State v. Claycamp*[13]—are distinguishable.

In *Abram*, the written jury instruction, which was not objected to by the defendant or the State, read in relevant part that "'[t]he fact that the [d]efendant did not testify *must be considered* by you as an admission of guilt . . . .'"[14] Copies of the instruction containing this plainly incorrect language were provided to the members of the jury to use while deliberating. However, in orally instructing the jury, the court stated that "'[t]he fact that the [d]efendant did not testify must *not* be considered by you as an admission of guilt . . . .'"[15] In other words, the correct version of the instruction was read to the jury, but the incorrect language was provided to the jury in written form.

We held in *Abram* that this was not structural error, but subject to harmless error analysis. We concluded that even though the correct language was actually read to the jury, the error was not harmless. In so concluding, we reasoned that the incorrect instructions were emphasized by virtue of having been written and available to the jury during its deliberations.

In *Claycamp*, the defendant raised a defense of self-defense at trial. At the conclusion of evidence, the court read to the jury its instructions. The State and the defense then made closing arguments. In response to some comments made by the State in its argument, the court admonished the jury that it was

---

[12] *State v. Abram*, 284 Neb. 55, 815 N.W.2d 897 (2012).

[13] *State v. Claycamp*, 14 Neb. App. 675, 714 N.W.2d 455 (2006).

[14] *State v. Abram, supra* note 12, 284 Neb. at 60, 815 N.W.2d at 903.

[15] *Id.*

"'not to consider any sort of [the victim's] conduct or the consequences of his conduct. This is about the defendant . . . .'"[16] The Court of Appeals noted that the admonishment to the jury was contradictory to the earlier instructions regarding the defendant's defense of self-defense. The Court of Appeals applied a harmless error standard and concluded that the error was not harmless and that reversal was warranted.

Unlike *Abram* and *Claycamp*, where the instruction provided was inconsistent with other instructions, was incorrect, or both, here, there is no suggestion that the initial part of instruction No. 4 read to the jury was incorrect—only that it was incomplete. This is reflected in the exchange between the court and counsel when the court explained that it would be adding to the instruction and reading it again. In fact, as we have noted above, this record does not even include the language originally read to the jury—whether it be the original instruction the court read from or a transcript of the court's verbal instruction as it would appear in the bill of exceptions.

In this case, we apply a harmless error standard and decline to find any. First, this court lacks a complete record. Moreover, there is no allegation that the initial instruction as read to the jury was incorrect, but only that it was incomplete. Nor is there any allegation that the final instruction read to the jury and sent back with the jury during its deliberations was incorrect. We note Greer's argument that the reading again of the definition of penetration emphasized that concept to the jury. However, we conclude that it is not possible to determine whether any alleged emphasis would have helped or harmed Greer, especially where Greer has directed us to no authority on point.

Greer has failed to meet her burden to show that she was prejudiced by the procedure followed by the district court with respect to instruction No. 4. As such, we find no merit to this assignment of error.

---

[16] *State v. Claycamp, supra* note 13, 14 Neb. App. at 680, 714 N.W.2d at 459.

*Brazil's Testimony.*

In Greer's second assignment of error, she assigns that the district court erred in allowing Brazil to testify as an expert on the issue of grooming. We construe Greer's brief to argue that the district court did not "adequately demonstrate specific findings on the record that it had performed its duty as a gatekeeper to find her as an expert on the issues of grooming."[17] Greer further asserts that "grooming [was not] a scientifically valid methodology."[18]

[8] Neb. Rev. Stat. § 27-702 (Reissue 2016) provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Four preliminary questions must be answered in order to determine whether an expert's testimony is admissible: (1) whether the witness qualifies as an expert pursuant to § 27-702; (2) whether the expert's testimony is relevant; (3) whether the expert's testimony will assist the trier of fact to understand the evidence or determine a controverted factual issue; and (4) whether the expert's testimony, even though relevant and admissible, should be excluded in light of Neb. Rev. Stat. § 27-403 (Reissue 2016) because its probative value is substantially outweighed by the danger of unfair prejudice or other considerations.[19]

[9,10] Under our *Daubert*[20] and *Schafersman*[21] jurisprudence, a "trial court acts as a gatekeeper to ensure the evidentiary relevance and reliability of an expert's opinion," and this gatekeeping function "entails a preliminary assessment

---

[17] Brief for appellant at 22.

[18] *Id.*

[19] *City of Lincoln v. Realty Trust Group*, 270 Neb. 587, 705 N.W.2d 432 (2005).

[20] *Daubert v. Merrell Dow Pharmaceuticals, Inc., supra* note 1.

[21] *Schafersman v. Agland Coop, supra* note 2.

whether the reasoning or methodology underlying the testimony is valid and whether that reasoning or methodology properly can be applied to the facts in issue."[22] Still, "*Daubert* does not create a special analysis for answering questions about the admissibility of all expert testimony. Not every attack on expert testimony amounts to a *Daubert* claim. If a witness is not offering opinion testimony, that witness' testimony is not subject to inquiry pursuant to *Daubert*."[23]

Finally, we have noted that

> courts need not reinvent the wheel each time that specialized evidence is adduced. The proponent need not continuously go through the exercise of re-proving reliability of the same evidence in every case. Instead, once a Nebraska trial court has actually examined and assessed the reliability of a particular scientific wheel under *Daubert*, and its determination has been affirmed on appeal, then other courts may simply take judicial notice and ride behind. In such cases, the proponent establishes a prima facie case of reliability by relying on precedent, and the burden shifts to the opponent to show that recent developments raise doubts about the validity of previously relied-upon theories or techniques.[24]

We find no merit to Greer's arguments on appeal. First, we agree with the district court that *Daubert* was inapplicable in this case. As noted above, our case law is clear that not every instance of expert testimony is a *Daubert* issue. In this case, prior to testifying, Brazil indicated that she did not have any particular knowledge about Greer or the alleged victims in this case and that she was not prepared to testify as to whether Greer's conduct qualified as grooming. And indeed,

---

[22] *State v. Robinson*, 272 Neb. 582, 618, 724 N.W.2d 35, 68 (2006), *abrogated on other grounds, State v. Thorpe*, 280 Neb. 11, 783 N.W.2d 749 (2010).

[23] *State v. Schreiner*, 276 Neb. 393, 405, 754 N.W.2d 742, 754 (2008).

[24] *State v. Casillas*, 279 Neb. 820, 838, 782 N.W.2d 882, 898 (2010).

her testimony was in conformity with her testimony at pre-trial hearings—at no point did she offer any opinion about Greer's conduct.

Moreover, even if we were to conclude that *Daubert* was applicable, a decision we need not reach here, the record shows that the district court held a *Daubert* hearing. At that hearing, Brazil testified to her many years of experience in conducting and monitoring forensic interviews of child sexual assault victims, including attending and teaching seminars on that topic. We find no abuse of discretion in the district court's conclusion, set out in the record, that Brazil qualified as an expert and that her testimony was admissible.

We note also the confusion that seems to have resulted from the Court of Appeals' opinion in *Edwards*, which we find distinguishable and inapplicable.[25] The district court concluded the factor that made *Daubert* an issue in *Edwards* was that the pediatrician who testified regarding grooming in that case testified the defendant's actions were, in fact, grooming. The distinction noted by the district court is in keeping with our case law as set out above and is consistent with our conclusion in this case. We further note that to the extent that *Edwards* could be read to categorically reject such testimony, it is disapproved.

There is no merit to Greer's assignment of error regarding Brazil's testimony.

*Excessive Sentences.*

Finally, Greer assigns that the sentences imposed upon her were excessive. As an initial matter, we note that all of Greer's sentences were within statutory limits and that the record shows the court considered Greer's presentence investigation and all of the relevant factors as set forth in case law.

Instead, Greer primarily takes issue with the consecutive nature of her sentences:

---

[25] *State v. Edwards, supra* note 3.

The record reflects that counts 7 [through] 12 all arose out of the same transactions and series of events. The State agrees with this assertion as it filed a motion to consolidate stating the same. . . . Because child abuse allegations all arose out of the same times as count 1, they therefore should be concurrent with each other as well as to count 1.

Additionally, counts 5 and 6 should be concurrent with one another as they are the same victim and are part of the same series and chain of events. Finally, the evidence shows that counts 2 and 3 all arose out of the same series of transactions.

It is logical that the charges should be served concurrently.[26]

[11,12] When sentences imposed within statutory limits are alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering well-established factors and any applicable legal principles.[27] A judicial abuse of discretion exists only when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[28]

[13,14] When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime.[29] The sentencing court is not limited to any mathematically applied set of factors, but the

---

[26] Brief for appellant at 26.

[27] *State v. Blake, supra* note 8.

[28] *Id*.

[29] *Id*.

appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.[30]

[15] It is within the discretion of the trial court to direct that sentences imposed for separate crimes be served consecutively.[31] The test of whether consecutive sentences may be imposed under two or more counts charging separate offenses, arising out of the same transaction or the same chain of events, is whether the offense charged in one count involves any different elements than an offense charged in another count. The test is whether some additional evidence is required to prove one of the other offenses.[32]

We turn first to Greer's contention that her sentence on count 5 (first degree sexual assault of a child—J.H.) should run concurrent to her sentence on count 6 (also first degree sexual assault of a child—J.H.). We observe that, in fact, her sentence on count 4 was ordered to be served concurrent to the remainder of her sentences. As such, there is no merit to this assertion.

Greer also argues that the child abuse counts against her all arose out of the same transactions and series of events. But while they involve the same general conduct on Greer's part, they also involve six different children and the State had to separately prove the elements of child abuse as to each of the children in order to obtain guilty verdicts.

Greer additionally argues that the child abuse counts arose from the same set of facts as count 1 (first degree sexual assault of a child—A.F.), and so, the sentences for child abuse should run concurrently. But the elements the State had to prove for child abuse are distinct from those for first degree

---

[30] *Id.*

[31] *State v. Andersen*, 238 Neb. 32, 468 N.W.2d 617 (1991).

[32] *Id.*

sexual assault of a child. We find no abuse of discretion in the district court's order sentencing Greer consecutively for any of these convictions.

Finally, Greer argues that the tampering with a witness counts arise from the same series of transactions. Again, as to these counts, the State had to prove the elements of those crimes as occurring on different occasions, and thus, different evidence was required.

Because all of the counts required the proving of different elements or different evidence, there was no abuse of discretion in the district court's sentences. There is no merit to this assignment of error.

## CONCLUSION

The district court's judgments and convictions are affirmed.

Affirmed.