IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. CALDERON-RIVAS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

MARLON O. CALDERON-RIVAS, APPELLANT.

Filed February 28, 2023.   No. A-22-445.

Appeal from the District Court for Douglas County: J RUSSELL DERR, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Alyssa M. Jelinske and Ceci N. Menjivar for appellant.

Douglas J. Peterson, Attorney General, and Jordan Osborne for appellee.

RIEDMANN, BISHOP, and ARTERBURN, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Marlon O. Calderon-Rivas appeals from his convictions and sentences following a jury trial in Douglas County District Court. He assigns that the district court erred in various evidentiary rulings, erred in denying his motions to continue trial, and that it imposed excessive sentences. Following our review, we affirm.

## BACKGROUND

Calderon-Rivas was charged with two counts of first degree sexual assault of a child and three counts of third degree sexual assault of a child. Prior to trial, Calderon-Rivas filed a motion to suppress statements he made during an interview with a police officer.

At a hearing on the motion to suppress, Shannon Knuth, a member of the Omaha Police Department, testified that she conducted the interview of Calderon-Rivas. Knuth is fluent in

- 1 -

Spanish, and the interview was conducted in Spanish as Calderon-Rivas did not speak English. Calderon-Rivas is from El Salvador, and the dialect was a bit different, and there was one point where Knuth could not understand exactly what he was explaining, so she asked him to explain in a different way. At one point, Calderon-Rivas did not understand something Knuth said, so she explained it in a different way; even during that time, Calderon-Rivas was still answering questions appropriately according to what Knuth was asking.

Knuth provided Calderon-Rivas *Miranda* warnings in Spanish from a form and filled in his answers. Calderon-Rivas agreed to speak with her after being read the *Miranda* warnings. Calderon-Rivas had been brought to the interview room shortly after 9 p.m.; the interview began just after 11 p.m. and lasted approximately 50 minutes. When Knuth initially came into the room, Calderon-Rivas was sleeping on the floor. During the interview, Calderon-Rivas made statements confessing to digital penetration, penile-vaginal penetration, and touching of the victim's vagina and breasts.

At no time during the interview did Calderon-Rivas indicate he did not understand what was going on or that he wanted to end the interview. He did not say he needed a break or state that he needed the restroom or water. He did not refuse to answer any questions. Knuth did not make any promises to Calderon-Rivas in exchange for his admissions. Knuth stated she told Calderon-Rivas that she thought he was going to go to prison for a very long time. When they started talking about why he was there, he appeared upset and started to cry.

Calderon-Rivas made statements that indicated he was suffering from depression, stress, and some family issues. Knuth said that although Calderon-Rivas made statements that things "were like a dream" and that he could not remember things, he was still able to provide specific details about the timing of the assaults, events that happened prior to and after the assaults, as well as the victim's response to being sexually assaulted. Knuth stated that when Calderon-Rivas spoke about not knowing what day it was or that it was like a dream, he spoke of it in a past tense.

The district court denied the motion to suppress. The district court stated that Knuth was fluent in Spanish and spoke to Calderon-Rivas in Spanish, that she made no threats against him, that the interview was not excessive in length, that he was given water and at no time was he denied access to a bathroom. It found that given the totality of the circumstances, Calderon-Rivas' statement was voluntary and admissible into evidence.

Calderon-Rivas filed a motion in limine seeking to prevent the State from presenting evidence regarding, among other things, statements made to 911 operators and police body camera footage. After a hearing, the district court issued a written ruling stating that it would allow the State to offer, and that the court would likely receive into evidence, the 911 audio tape and police body camera video.

At trial, the victim testified that she was born in 2009, and that she had previously lived in a home with her mother, brother, and Calderon-Rivas. The victim's mother shares a child with Calderon-Rivas; Calderon-Rivas was born in 1997. The victim stated that Calderon-Rivas came into her room with no clothes on, and that she was still in bed wearing her pajamas. Calderon-Rivas touched her chest, pulled her to the bottom of the bed, and started touching her vagina with his fingers. The victim was yelling and crying and told him to stop. Calderon-Rivas touched the inside of her vagina with his fingers, telling her he was trying to find something. Calderon-Rivas then placed his penis in her vagina.

Another time, Calderon-Rivas entered the victim's bedroom fully naked and put his penis in the victim's vagina; he also touched her chest. When Calderon-Rivas ejaculated, he told the victim "that something was going to be our baby's thing." At some point after the last incident, the victim messaged with her father in El Salvador, who instructed the victim to call the police, which the victim did. The victim underwent a medical examination which included the collection of a sexual assault kit.

At trial, Knuth testified consistent with her testimony at the suppression hearing. Calderon-Rivas renewed his motion to suppress Knuth's testimony. Information regarding the DNA results was presented, specifically that a swab taken from the victim's vagina showed the presence of seminal fluid; the vaginal swab sperm fraction was a mixture, and the victim could not be excluded as the major contributor and Calderon-Rivas could not be excluded as the minor contributor. When the State offered the audio from the 911 call and the body camera footage into evidence, Calderon-Rivas objected based on his motion in limine, which the district court overruled.

The jury found Calderon-Rivas guilty of all charges. For each conviction of first degree sexual assault of a child, the district court sentenced Calderon-Rivas to 25 to 26 years' imprisonment; for each conviction of third degree sexual assault of a child, the district court sentenced Calderon-Rivas to 2½ to 3 years' imprisonment. The sentences were ordered to be served consecutively. Calderon-Rivas was given credit for 595 days against the sentence imposed for count I. Calderon-Rivas appeals.

## ASSIGNMENTS OF ERROR

Calderon-Rivas assigns that the district court (1) erred in denying his motion to suppress his statements, (2) erred in denying his two motions to continue trial, (3) erred in denying his motion in limine regarding the 911 call and body camera footage, and (4) abused its discretion by imposing excessive sentences.

## STANDARD OF REVIEW

In reviewing a motion to suppress a statement based on its claimed involuntariness, including claims that law enforcement procured it by violating the safeguards established by the U.S. Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), an appellate court applies a two-part standard of review. *State v. Martinez*, 306 Neb. 516, 946 N.W.2d 445 (2020), *abrogated on other grounds, State v. Matteson*, 313 Neb. 435, ___ N.W.2d ___ (2023). Regarding historical facts, an appellate court reviews the trial court's findings for clear error. *Id*. Whether those facts meet constitutional standards, however, is a question of law, which an appellate court reviews independently of the trial court's determination. *Id*. In reviewing a motion to suppress, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and considers that the trial court observed the witnesses testifying in regard to such motions. *Id*.

A decision whether to grant a continuance in a criminal case is within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v. Dixon*, 282 Neb. 274, 802 N.W.2d 866 (2011). An abuse of discretion occurs when a trial court's decision is

based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and the evidence. *Id*.

A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court. *State v. Greer*, 312 Neb. 351, 979 N.W.2d 101 (2022). A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *Id*.

## ANALYSIS

*Motion to Suppress.*

Calderon-Rivas' motion to suppress alleged that he did not knowingly, voluntarily, or intelligently waive his *Miranda* rights and that his statements were involuntary. The evidence adduced encompassed both the waiver of Calderon-Rivas' *Miranda* rights and the manner in which the interrogation was conducted. The district court's order denying the motion to suppress focused on whether the incriminating statements were voluntarily made, and it concluded that they were. On appeal, Calderon-Rivas focuses his argument on case law related to the voluntariness of a waiver of *Miranda* rights although he broadly alleges his "statements were not made knowingly and voluntarily." Brief for appellant at 20. We find that both the waiver of his rights under *Miranda*, and subsequent statements made to police, were voluntary.

*Miranda* warnings are an absolute prerequisite to custodial interrogation; statements made during a custodial interrogation in the absence of these warnings and a valid *Miranda* waiver are inadmissible, even if otherwise voluntarily made. *State v. Martinez, supra*. If a defendant seeks suppression of a statement because of an alleged violation of *Miranda*, the State must prove that the defendant validly waived his or her *Miranda* rights by a preponderance of the evidence. *State v. Martinez, supra*. To be a valid waiver of *Miranda* rights, the waiver must be knowing and voluntary. *State v. Martinez, supra*. A waiver is knowing if it is made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. *Id*. A waiver is voluntary if it is the product of a free and deliberate choice rather than through intimidation, coercion, or deception. *Id*. An appellate court looks to the totality of the circumstances to determine whether a defendant validly waived his or her *Miranda* rights. *State v. Martinez, supra*.

The district court found that Knuth testified Calderon-Rivas appeared alert and sober, that he stated he understood her questions, and his responses were appropriate; it also stated Knuth was fluent in Spanish and spoke to Calderon-Rivas in Spanish. It found Knuth testified she made no threats or promises, and that when Calderon-Rivas asked, Knuth told him he was likely to go to prison for a long time. The district court observed that Calderon-Rivas was given water at some point and that there was no evidence that he was denied access to a bathroom. We find no clear error in these factual findings.

Based upon the above factual findings, Calderon-Rivas made a knowing, intelligent, and voluntary waiver of his *Miranda* rights when he chose to speak with Knuth. While the interview took place later at night, it was not unduly long. There is no indication that Knuth made any promises of leniency; she testified she told Calderon-Rivas that she thought he would go to prison for a very long time. While Calderon-Rivas did express that he was under stress, it did not affect

his ability to recall details. Knuth acknowledged that in El Salvador, they tend to speak a different dialect, but she described only two times in the interview where either she, or Calderon-Rivas, had to further explain or clarify a question or answer. Under the totality of the circumstances, we find that Calderon-Rivas made a knowing and voluntary waiver of his *Miranda* rights; there was no police coercion and Calderon-Rivas understood his rights.

We also find that Calderon-Rivas' incriminating statements were voluntary. The 5th Amendment to the U.S. Constitution-applicable to state governments by incorporation through the 14th Amendment-protects against compelled self-incrimination by providing that no person shall be compelled in any criminal case to be a witness against himself or herself. *State v. Hernandez*, 299 Neb. 896, 911 N.W.2d 524 (2018). Although the *Miranda* rule and the requirement that confessions be made voluntarily both arise out of the Fifth Amendment, the question of whether a custodial interrogation complies with *Miranda* is distinct from the question of whether statements made during a custodial interrogation were sufficiently voluntary. *State v. Hernandez, supra*. Once it is clear that a defendant has made a knowing and voluntary waiver of his or her *Miranda* rights, the issue then becomes whether the confession itself was voluntary. *Smith v. Duckworth*, 856 F.2d 909 (7th Cir. 1988).

To overcome a motion to suppress, the prosecution has the burden to prove by a preponderance of the evidence that incriminating statements by the accused were voluntarily given and not the product of coercion. *Id*. In determining whether an accused's statement was given freely and voluntarily, courts examine police conduct in light of the totality of the circumstances, including the tactics used by police and the details of the interrogation. *Id*. Coercive police activity is a necessary predicate to finding that a confession is not voluntary. *Id*.

As previously discussed, Knuth testified that she did not make any threats or promises to Calderon-Rivas. While the interview took place later at night, it was not unduly long. There is no evidence Calderon-Rivas was denied a break or access to a restroom upon request. Knuth testified that Calderon-Rivas appeared alert and sober, that he understood her questions and his responses were appropriate. While he did wait for 2 hours in the interview room, Knuth found him sleeping when she entered the room. Viewing the totality of the circumstances, there was no evidence of coercive police activity. Therefore, we determine that the statements were voluntarily made. Accordingly, we find no error in the district court's denial of the motion to suppress.

*Motions to Continue.*

On March 10, 2022, Calderon-Rivas filed a motion in limine which sought to prevent the State from introducing DNA evidence at trial. The basis for the exclusion was Calderon-Rivas' allegation that the State provided a summary report of the DNA results on January 26 but did not provide the complete DNA reports until March 9, approximately two weeks prior to trial. At a March 22 hearing on the motion in limine, defense counsel argued it would be unfairly prejudicial because the 53-page disclosure book was received approximately 2 weeks prior to trial, that based on *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), the State had violated Calderon-Rivas' constitutional rights, and that allowing something as complicated as DNA evidence being given at the last minute set a poor precedent.

The prosecutor noted that she had started on the case in March 2022 and immediately disclosed the bench book and asked if defense counsel wanted to depose the DNA expert but

received no response. Defense counsel argued that it was not just about deposing the State's expert, but about potentially retaining an opposing DNA expert. The district court's order denying the motion in limine found that the State had provided the DNA test results on January 26, that on March 4 Calderon-Rivas requested the State provide the further backup information, which the State provided on March 9.

On March 23, 2022, Calderon-Rivas filed a motion to continue trial. At a hearing on the motion to continue, defense counsel noted it was filing the motion to continue due to the district court's denial of the motion in limine to prevent admission of the DNA evidence at trial. Counsel later stated that it was not just the DNA evidence, but that they had received new information about a witness being involved requiring a motion to endorse and motion to depose, as well as motions in limine being filed.

The State argued that it had disclosed everything, that the State offered a deposition of the DNA expert, and that while the State was filing motions regarding evidence it intended to introduce at trial, it was doing it as a courtesy review as the State was not required to obtain a ruling from the court and permission from the defense to present its case. As it related to the DNA evidence, the State argued that the deconvolution report that the defense had requested was not included in the lab disclosure book, but that once the defense requested it, it was provided to them within approximately 2 hours. It also argued the laboratory that produced the disclosure book and deconvolution report was not a governmental agency or law enforcement, so if the State did not have the report in its custody, it could not turn it over to defense.

The hearing ended without a ruling on the motion to continue, but on March 25, 2022, the court entered a written order overruling the motion. The same day, Calderon-Rivas filed a second motion to continue trial, alleging the State's delayed disclosure of certain DNA evidence was a *Brady* violation, and that the delay in the State disclosing the evidence put the defense in the position of requesting a continuance so as not to waive any issue on appeal. The district court overruled the motion and trial commenced on March 28.

On appeal, Calderon-Rivas argues that he clearly indicated good cause based on what he alleges was the State's late disclosure of DNA evidence and failure to provide deconvolution reports necessary for him to perform a comparison analysis, and that the district court denied the motion to continue based upon prior continuances that Calderon-Rivas argues were not his fault. But the district court's written order denied the first motion to continue based upon the DNA evidence issue rather than the number of prior continuances and it appears the denial of the second motion was on the same basis. While Calderon-Rivas argues he was unable to obtain a comparison analysis of the DNA, he has not provided information on what this analysis would show, or how he was prejudiced by not having this at trial.

A court does not abuse its discretion in denying a continuance unless it clearly appears that the party seeking the continuance suffered prejudice because of that denial. *State v. Dixon*, 282 Neb. 274, 802 N.W.2d 866 (2011). It does not clearly appear that Calderon-Rivas suffered prejudice because of the denial of his motions to continue trial. As such, we cannot say the district court abused its discretion in denying the motions to continue.

*Motion in Limine.*

Calderon-Rivas assigns that "[t]he district court erred in denying Calderon-Rivas' motion in limine to prevent admission of the 911 call at trial" and "[t]he district court erred in denying Calderon-Rivas' motion in limine to prevent admission of any and all body worn camera footage at trial." Brief for appellant at 6. A motion in limine is a procedural step to prevent prejudicial evidence from reaching the jury. *State v. Ferrin*, 305 Neb. 762, 942 N.W.2d 404 (2020). It is not the office of a motion in limine to obtain a final ruling upon the ultimate admissibility of the evidence. *Id*. Therefore, when a court overrules a motion in limine to exclude evidence, the movant must object when the particular evidence is offered at trial in order to predicate error before an appellate court. *Id*. An appellant who has assigned only that the trial court erred in denying a motion in limine has not triggered appellate review of the evidentiary ruling at trial. *Id*.

In *State v. Ferrin, supra*, the defendant filed a motion in limine that was overruled. In his brief on appeal, he asserted that he objected to the evidence when it was offered at trial and the objection was overruled. However, on appeal, the appellant assigned error only to the court's ruling on the motion in limine and not to the court's ruling at trial; therefore, the Nebraska Supreme Court refused to address the assigned error on the basis that the assigned error did not trigger appellate review. *Id*. This is the situation presented here. Because Calderon-Rivas assigns error only to the district court's ruling on his motions in limine, he has not triggered appellate review of these issues. Therefore, we do not address them.

*Excessive Sentences.*

Calderon-Rivas argues the district court abused its discretion by ordering him to serve an excessive sentence because the court failed to adequately consider the mitigating factors set forth by the Supreme Court. When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *State v. Greer*, 312 Neb. 351, 979 N.W.2d 101 (2022). The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

First degree sexual assault of a child is a Class IB felony and, due to the specific penalty provisions provided by Neb. Rev. Stat. § 28-319.01 (Reissue 2016), is punishable by a mandatory minimum sentence of 15 years' imprisonment, and a maximum sentence of life imprisonment. *Id*.; Neb. Rev. Stat. § 28-105 (Cum. Supp. 2020).Third degree sexual assault of a child is a Class IIIA felony which has no minimum sentence required but is punishable by a maximum sentence of 3 years' imprisonment. § 28-105; Neb. Rev. Stat. § 28-320.01 (Reissue 2016). Calderon-Rivas was sentenced to 25 to 26 years' imprisonment for each conviction of first degree sexual assault of a child and 2½ to 3 years' imprisonment for each conviction of third degree sexual assault of a child. These sentences are within the statutory guidelines, and we review for an abuse of discretion.

The presentence investigation report (PSR) shows that Calderon-Rivas was 24 years old at the time of sentencing and he had one child. Overall, he scored at a high risk for community-based

interventions. The probation officer noted that Calderon-Rivas did not have an extensive history of criminal behavior; however, the officer stated Calderon-Rivas was minimizing his responsibility for the convictions and blamed the 11-year-old victim for enticing him. In his interview for the PSR, Calderon-Rivas stated that while the mother of the victim told police that the victim reported many times that he had abused her, he thought it was only two times. He also advised that the victim was "enticing" him.

Calderon-Rivas argues the district court failed to meaningfully consider his mentality and education. He argues the district court relied heavily on the nature of the offense and should have considered that he had no prior history of violence. However, at sentencing, the district court specifically referenced that one of the factors it considered was Calderon-Rivas' lack of history. But the district court also referenced the seriousness of the offense, and that Calderon-Rivas was not accepting responsibility other than saying he was sorry it happened at the sentencing hearing. The district court also discussed the effect that the crime had on the victim, noting that it could not "fix that issue," but had to take it into consideration. Based upon the above, we cannot say the district court abused its discretion in imposing its sentences.

CONCLUSION

The district court did not err in denying Calderon-Rivas' motion to suppress, nor in denying his motions to continue. We do not review the assigned errors related to the district court's ruling on the motion in limine on appeal. Calderon-Rivas' sentences are not an abuse of discretion. We affirm his convictions and sentences.

AFFIRMED.