IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. SVOBODA

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

CHAD L. SVOBODA, APPELLANT.

Filed January 24, 2023.    No. A-22-220.

Appeal from the District Court for Lancaster County: JODI L. NELSON, Judge. Affirmed.

Joe Nigro, Lancaster County Public Defender, and Brittani E. Lewit for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis for appellee.

MOORE, RIEDMANN, and WELCH, Judges.

MOORE, Judge.

## INTRODUCTION

Chad L. Svoboda appeals his plea-based convictions and sentences from the Lancaster County District Court. He assigns that the district court erred by not ordering a drug and alcohol evaluation and not granting his request to complete residential treatment prior to sentencing and that his sentences were excessive. He also claims that his trial counsel was ineffective in several respects. Having considered his arguments and reviewed the record, we affirm his convictions and sentences.

## STATEMENT OF FACTS

On June 10, 2021, the State filed an information in the district court, charging Svoboda with burglary in violation of Neb. Rev. Stat. § 28-507 (Reissue 2016), a Class IIA felony, and possession of burglar's tools in violation of Neb. Rev. Stat. § 28-508 (Reissue 2016), a Class IV felony.

- 1 -

At a status hearing before the district court on November 30, 2021, Svoboda's attorney informed the court that Svoboda "wants to take the matter to trial." The court indicated that the case would be placed near the top of the list of cases to be tried during the next jury term, also observing that the case had "been on the list before."

At the same hearing, the district court also addressed a motion filed by the State, requesting leave to amend the information to add habitual criminal enhancements to the original charges. Svoboda's attorney objected, noting that the habitual criminal enhancements were being added in response to Svoboda's rejection of a plea offer and his exercising his right to trial. The State confirmed that Svoboda had rejected a plea offer that would have required him to plead to the burglary charge of the original information; in return, the State would have dismissed the possession of burglar's tools charge in this case as well as a possession of a controlled substance charge in another case. The State also confirmed its communication of the fact that it would be adding the habitual criminal enhancements if Svoboda rejected the plea offer. Both Svoboda and his attorney confirmed that the State's comments reflected their understanding of the plea negotiations that had taken place. Svoboda also confirmed that he had rejected the offer of pleading to a single count of burglary. The court granted the State's motion, and the State subsequently filed the amended information. Svoboda was arraigned on the amended information and entered pleas of not guilty.

A plea hearing was held before the district court on December 13, 2021. The court granted the State's request to file a second amended information, adding habitual criminal enhancements to charges of burglary in violation of § 28-507, a Class IIA felony; possession of burglar's tools in violation of § 28-205, a Class IV felony, and possession of a controlled substance (methamphetamine) in violation of Neb. Rev. Stat. § 28-416 (Reissue 2016), a Class IV felony. Svoboda was arraigned on the second amended information, indicating his understanding of the charges and penalties and entering pleas of no contest.

During the rights advisory by and colloquy with the district court that followed, Svoboda affirmed that he understood his rights, the effect of his pleas on those rights, the effect that habitual criminal enhancements would have on his sentences, the fact that a habitual criminal finding would deny him any chance at probation, and the fact that his sentences would be decided solely by the court. Svoboda denied having received any threats, inducements, or promises other than the plea agreement to induce him to waive his rights. He also denied having any questions about his rights as explained to him by the court.

Svoboda then affirmed that he had an opportunity to talk with his trial counsel about his rights, that he did not need any more time, and that he was freely and voluntarily waiving the rights explained by the district court. Svoboda's attorney affirmed that he had discussed Svoboda's rights with him. He also affirmed his belief that Svoboda understood his rights; that Svoboda understood the consequences of waiving them; and that Svoboda was waiving his rights freely, voluntarily, knowingly, and intelligently. The court accepted Svoboda's waiver, finding beyond a reasonable doubt that Svoboda understood his rights and the consequences of waiving them and had waived them freely, voluntarily, knowingly, and intelligently.

In response to further questioning from the district court, Svoboda affirmed that his attorney had explained to him the three charges set forth in the second amended information and that he understood he was charged with burglary, possession of burglar's tools, and possession of

a controlled substance. Svoboda also indicated that he told his attorney everything he knew about the case and that he was not aware of any helpful information which he had not discussed with his attorney. Svoboda indicated that he was satisfied with his attorney's work, that he believed his attorney was competent and knew what he was doing, and that his attorney had not refused or neglected to do anything Svoboda had asked of him. And, Svoboda indicated he had enough time to talk about the case with his attorney and did not need any more time to talk to him about anything.

The State recited the details of the parties' plea agreement for the record, which involved Svoboda's pleas of guilty or no contest to charges in the present case as well as to charges in cases in Otoe and Cass Counties. In this case, Svoboda had agreed to plead to charges of burglary, possession of burglar's tools, and possession of a controlled substance. And, he had agreed to plead to a charge of possession of a controlled substance in both the Cass County and the Otoe County case. In exchange for "all those pleas of guilty or no contest, the State, Cass County and Otoe County ha[d] all agreed not to pursue . . . habitual criminal [enhancements], as well as not offer any evidence of [Svoboda being a] habitual criminal." The prosecutor noted that "the possession of controlled substance [charge] that was added in this . . . second amended information [in the present case] came from a county court case. . . . That case will be dismissed at [Svoboda's] costs."

Svoboda's attorney agreed that the State's recitation reflected his understanding of the terms of the parties' plea agreement. Svoboda, however, sought clarification, and after a brief private discussion between Svoboda and his attorney, the district court and Svoboda's attorney discussed the details of the plea agreement further. During this discussion, the following exchange between the court and Svoboda occurred:

> THE COURT: — as I understand it . . . if you plead to these and you do what you're supposed to do in Otoe and Cass County, what will happen is, we will get to sentencing and we will not have what I'll call an enhancement hearing at sentencing where they would offer evidence of prior convictions.
>
> Because without them offering evidence of prior convictions, I can't find that you're a habitual criminal.
>
> [Svoboda:] Yes, ma'am.
>
> THE COURT: So . . . I hear this as, if you do what you're supposed to do on your end —
>
> [Svoboda:] Right.
>
> THE COURT: Then they won't go forward with that, and then these cases — these charges will be their original . . . sentencing charge, which means that the burglary is a class — that a Class 2A?
>
> [The State:] Yes, Your Honor.
>
> THE COURT: Yeah. So it would be a Class 2A felony, which would carry with it a possible penalty of up to 20 years in prison; you understand that?
>
> [Svoboda:] Yes, ma'am.
>
> THE COURT: The possession of burglar[']s tools is a Class 4 felony and would carry with it a possible penalty of up to two years in prison, up to a $10,000 fine, any combination of the fine and the imprisonment; and the possibility of up to 12 months of post-release supervision. You understand that?

[Svoboda:] Yes, ma'am.

THE COURT: And the same is true of the charge of possession of a controlled substance. It would then basically revert back to its original penalty, a Class 4 felony, up to two years in prison, up to a $10,000 [fine]; any combination of the fine and the imprisonment. And the possibility of post-release supervision —

[Svoboda:] Yes, ma'am.

THE COURT: — up to 12 months. You understand all of that?

[Svoboda:] Yes, ma'am.

THE COURT: Okay. So is that your understanding of the plea —

[Svoboda:] Yes.

THE COURT: — agreement?

[Svoboda:] Yes, ma'am. Okay.

At that point, the State clarified that "Cass County and Otoe County do not have the habitual criminal [enhancement] even alleged at this point." The district court then observed that "if he doesn't go forward with this, they're going to allege it," and the State confirmed, "They may pursue it, yes." In response, Svoboda stated, "Yes. I have no problem. I'm . . . going to take care of that there, plead guilty to those counts." And, he agreed that the discussion reflected his understanding of the plea agreement. Svoboda denied any promises or representations outside of the plea agreement as to what his sentences would be if the court accepted his pleas; he denied any threats or inducements other than the stated agreement to secure his plea; and he agreed that he was entering his pleas freely and voluntarily. He also agreed that his attorney had explained and that he fully understood what the State would have to prove to convict him of the three charges in this case.

The State then provided the following factual basis to support Svoboda's pleas:

As to Count 1 and 2, . . . the regional manager at Jiffy Lube located at [an address] in Lincoln, Lancaster County, Nebraska, reported to [a police officer] that his business had been burglarized between 6:30 a.m. and 7 o'clock a.m. on December 13th, 2020.

On the east side of the business, [the] officer observed one of the window panes on the sliding overhead garage to be shattered. The window pane was large enough for someone to gain entry.

On the security camera footage [the] officer observed a white Dodge Caravan with no plates or papers and four bumper stickers on the back arrive to the west parking lot of Laundry-land. The vehicle also had black trim, no rear passenger window and a dark-colored plastic bag that was used as a makeshift window.

. . . [I]n viewing footage after the suspect entered the business, he went straight for the business office and immediately located the safe, which is kept under the desk. The suspect retrieved several pry bars from a small pouch he brought with him and used them to pry open the safe.

The suspect then retrieved the coins and dollars bills from the safe, as well as a TPS re-programmer and a Samsung Tab A tablet. The total value of the items was $550. The suspect then returned to the white Dodge Caravan he arrived in and left the area.

A rusty piece of metal with a flathead was left next to the safe. [The manager] stated that did not belong to the business. On December 31st, 2020, [a police officer] sent [the investigating officer] an e-mail identifying the images of the suspect . . . that were placed on the Crimestoppers website.

[The officer who sent the email] identified the suspect as . . . Svoboda based on prior contact she had with him where he was observed operating the same . . . vehicle. [The investigating officer] also observed a . . . prior jail mugshot of . . . Svoboda and identified him as the suspect seen in the Jiffy Lube video.

During follow-up investigation [the investigating officer] observed that [police] had contact with Chad Svoboda on January 6, 2021, regarding an unrelated case. . . .

[Body camera footage showed the contact in that case occurred] while [Svoboda] was operating the same white vehicle used in the Jiffy Lube burglary on December 13th, 2020, based on the distinguishing features.

All of those events . . . occurred in Lancaster County, Nebraska.

As to Count 3, on June 1st, 2021, investigators with the Lancaster County narcotics task force were in an unmarked vehicle and were behind a black, 1995, Chevrolet K1500. Officers observed a male party later identified [other than Svoboda] to be seated in the bed of the pick[]up while moving on a public street.

Investigators called for a marked police cruiser to [come to] the area to perform a traffic stop. However, prior to the stop[,] the vehicle pulled into a parking lot and parked on the northwest corner of [a particular intersection].

Investigators exited their vehicle with badges of office displayed and identified themselves as police officers. . . . Svoboda was the front-seat passenger and was found to have an active warrant for his arrest.

Upon a search incident to arrest, investigators located a glass bulbous pipe with burnt residue, which had a positive pre-test for the presence of amphetamines and methamphetamines in the – a Schedule II controlled substance in his right front . . . pants pocket.

Also located in the vehicle was a hard sunglasses case that . . . Svoboda claimed ownership of that contained an additional glass bulbous pipe and multiple baggies contain[ing] . . . suspected methamphetamine.

All of these events occurred in Lancaster County, Nebraska.

After the State's recitation of the factual basis, Svoboda informed the district court that he still wished to enter pleas of no contest to the three charges in the second amended information. His attorney expressed his belief that Svoboda's pleas were consistent with the law and the facts of the case. Accordingly, the court found that Svoboda's pleas and waiver of rights were made knowingly, intelligently, and voluntarily and that there was a sufficient factual basis to support Svoboda's pleas. The court then accepted Svoboda's pleas and found him guilty of all three counts charged in the second amended information.

Before the plea hearing concluded, Svoboda's attorney inquired whether if as part of the presentence investigation (PSI), the court could also order a drug and alcohol evaluation of Svoboda. In response, the court stated, "I don't order any such . . . thing. That's . . . not . . . part of

. . . what I do. He may be voucher eligible. I don't know. That's up to the probation office and their resources."

A sentencing hearing was held before the district court on February 28, 2022. The district court noted that the PSI had been completed and asked Svoboda and his attorney whether they were ready to proceed with sentencing. Svoboda's attorney asked the court to consider a continuance of sentencing for 60 days because Svoboda had been admitted to another in-patient treatment program on February 24, after having been discharged from a previous program earlier in February for violating rules. The court denied Svoboda's request, stating that sentencing had been pending since December 13 and that "it is time to finish this case out." After that, Svoboda and his attorney agreed they were ready to proceed with sentencing.

In response to the district court's inquiries, Svoboda's attorney stated that he had an opportunity to review the contents of the PSI report and that he was not aware of any additions, corrections, or deletions that needed to be made to it. And, Svoboda affirmed that he had an opportunity to speak with his attorney about the contents of the report and that he was unaware of any necessary additions, corrections, or deletions. The court then heard arguments from the parties, as well as comments from Svoboda. During Svoboda's comments, he thanked his attorney and stated, "He's been a really good lawyer to me. Really good."

Prior to pronouncing sentence, the district court noted that it had carefully reviewed the PSI report, and it noted various details of Svoboda's "long" and "unwavering" prior criminal history. The court also acknowledged that Svoboda had "terrible problems with addiction, substance abuse," observing, however, that "there are lots of people in the world who do who don't go out and burglarize and steal and that get help," and who do not "wait until literally the day before . . . sentencing, to do something about it." Having regard for the nature and circumstances of the crimes of which Svoboda had been convicted in this case, as well as his history, character and condition, the court found that imprisonment was necessary for the protection of the public. The court further found that any lesser sentences than it was imposing would depreciate the seriousness of Svoboda's crimes and promote disrespect for the law. The court sentenced Svoboda to serve 5 to 10 years' imprisonment for burglary, 1 to 2 years' imprisonment for possession of burglar's tools, and 1 to 2 years' imprisonment for possession of a controlled substance. The court ordered that the sentence for possession of burglar's tools be served concurrent with the burglary sentence and the sentence for possession of a controlled substance be served consecutive to the other two sentences. The court gave Svoboda 15 days of credit for time served.

## ASSIGNMENTS OF ERROR

Svoboda assigns, reordered, that the district court erred in (1) not ordering a drug and alcohol evaluation to be completed as part of the PSI, (2) not granting his request for a continuance to enable completion of residential treatment prior to sentencing, and (3) imposing excessive sentences. Svoboda also assigns that his counsel was ineffective for failing to ensure that he understood the plea agreement, for failing to clarify the plea agreement on the record based on Svoboda's understanding of the agreement, for not reviewing the PSI report with him prior to sentencing, for not providing the court with documentation of his efforts at treatment, and for not clarifying his criminal history and convictions that had been set aside.

STANDARD OF REVIEW

A decision whether to grant a continuance in a criminal case is within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v. Abligo*, 312 Neb. 74, 978 N.W.2d 42 (2022).

A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court. *State v. Greer*, 312 Neb. 351, 979 N.W.2d 101 (2022). A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *Id.*

Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *State v. Warner*, 312 Neb. 116, 977 N.W.2d 904 (2022). In reviewing a claim of ineffective assistance of trial counsel on direct appeal, an appellate court determines as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. *Id.*

ANALYSIS

*Drug and Alcohol Evaluation.*

Svoboda assigns that the district court erred in not ordering a drug and alcohol evaluation to be completed as part of the PSI. At the end of the plea hearing, the court declined Svoboda's request, stating that ordering such evaluations was not part of what the court does. The court also observed that Svoboda "may be voucher eligible" but that was "up to the probation office and their resources." Svoboda asserts that he was not able to pay for an evaluation immediately following his December 2021 plea hearing and was not able to get into treatment right away. He argues that if the court had directed the probation office to "help him receive a substance evaluation" he would have been able to get into treatment in a more timely manner and would have been better able to demonstrate to the court his "willingness to work toward rehabilitation and address his addiction." Brief for appellant at 28. Svoboda does not cite any legal authority showing that he was entitled to receive a substance abuse evaluation prior to sentencing. We find no error in the court's decision to deny his request.

At the State's request, we have taken judicial notice of the records in the Otoe and Cass County cases, both of which were part of the multi-case plea agreement discussed on the record in this case. The State provided us with the case number of the appeals from Svoboda's plea in both cases (A-22-245, the Otoe County case is currently pending before this court; A-22-302, the Cass County case, was previously decided by memorandum opinion). See Neb. Rev. Stat. § 27-201 (Reissue 2016) (court shall take judicial notice if requested by party and supplied with necessary information; judicial notice may be taken at any stage of proceeding). See, also, *Gottsch v. Bank of Stapleton*, 235 Neb. 816, 458 N.W.2d 443 (1990) (court may judicially notice existence of its records and records of another court but judicial notice of facts reflected in court's records is subject to doctrine of collateral estoppel or of res judicata; judicial notice may take place at any

stage, including appeal); *State v. McMillion*, 23 Neb. App. 687, 875 N.W.2d 877 (2016) (proceeding under § 27-201(6) includes judicial activity which occurs after commencement of action and includes judicial action in appeal).

At a December 20, 2021, plea hearing, the Otoe County District Court ordered a PSI to include a substance abuse evaluation in that case. The court informed Svoboda that "if [he had] already completed a substance abuse evaluation within the past four months, you won't need to do a new one. Instead, you would just need to sign a release." The plea hearing in the Cass County case also occurred on December 20. There, the Cass County District Court also ordered a chemical dependency evaluation as part of the PSI. See *State v. Svoboda*, No. A-22-302, 2022 WL 16632962 (Neb. App. Oct. 24, 2022) (selected for posting to court website).

Here, the State argues that the district court's comments in the Otoe County case imply that a new substance evaluation does not need to be completed in each case if an evaluation has been completed recently in another case. It notes that the courts in the Cass and Otoe cases ordered those evaluations more than 6 weeks before Svoboda initiated the treatment program referenced at sentencing in the present case and that he was subsequently kicked out of the first program for violating program rules prior to enrolling in another program.

We agree with the State's assertion that the records in the three cases involved in the global plea agreement do not support Svoboda's contention that but for the court's refusal to order a substance abuse evaluation in this case, Svoboda would have entered treatment sooner. And, as discussed below, the court did not abuse its discretion in sentencing. Svoboda has not shown that the court erred in not ordering a substance abuse evaluation prior to sentencing in this case. This assignment of error fails.

*Request for Continuance.*

Svoboda assigns that the district court erred in not granting his request for a continuance to enable completion of residential treatment prior to sentencing. Svoboda argues that "[t]he goal of rehabilitation can be accomplished by [him] learning the tools he needs to address his substance use" and that by denying him the opportunity to complete treatment prior to sentencing, the court "denied him the opportunity to learn those skills." Brief for appellant at 28. He argues further that due to the court's decision not to continue the sentencing hearing to allow him to complete rehabilitative programming, he was "not able to demonstrate that he could fully engage in rehabilitative services, which would have been mitigating" at sentencing. *Id.* The court did not abuse its discretion in denying Svoboda's motion for a continuance.

A court does not abuse its discretion in denying a continuance unless it clearly appears that the party seeking the continuance suffered prejudice because of that denial. *State v. Baxter*, 295 Neb. 496, 888 N.W.2d 726 (2017). The PSI report in this case includes Svoboda's history of alcohol and drug use he reported to the probation officer, including the fact that he completed an evaluation in January 2022 and had previously done residential treatment and "IOP" while on probation and completed treatment while previously incarcerated. On the Level of Service/Case Management Inventory, Svoboda's risk with respect to alcohol and drug problems was high, and his score on the Simple Screening Instrument indicated a moderate to high risk level for substance misuse and the need for further evaluation. The probation officer reported that Svoboda's substance abuse "appears to have negatively impacted all areas of his life" and noted that Svoboda

- 8 -

would benefit from a co-occurring evaluation. The district court was well informed at the time of sentencing about Svoboda's issues with substance abuse. As discussed below, the court considered the appropriate factors and did not abuse its discretion in sentencing. Svoboda cannot show that he was prejudiced by the denial of his motion for continuance.

Further, as noted by the State, Svoboda's request for continuance to complete treatment was due, at least in part, to the fact that he was terminated from one treatment program in early February 2022 due to not following the rules, and entering a second treatment program just a few days prior to sentencing. That circumstance was due to events within Svoboda's control. See *State v. Baxter, supra* (where criminal defendant's motion for continuance is based upon occurrence or nonoccurrence of events within defendant's own control, denial of such motion is no abuse of discretion). This assignment of error fails.

*Excessive Sentence.*

Svoboda assigns that the district court imposed excessive sentences. He argues that the court abused its discretion by failing to meaningfully consider his "likelihood of success" on probation, need for substance abuse treatment, the circumstances of his offense, his general life circumstances, and his willingness to enter a plea. Brief for appellant at 17. He also argues that a sentence of probation would be better suited to his rehabilitative needs and that the court gave undue weight to his prior criminal history, which included a conviction for two counts of burglary in 1988 that was vacated and set aside on postconviction (following remand for new trial, Svoboda pled to misdemeanor charge of theft by unlawful taking).

In this case, Svoboda was convicted of one count of burglary, a Class IIA felony, one count of possession of burglar's tools, a Class IV felony, and one count of possession of a controlled substance, a Class IV felony. § 28-507, § 28-508, and § 28-416. A Class IIA felony is punishable by up to 20 years' imprisonment. Neb. Rev. Stat. § 28-105(1) (Cum. Supp. 2022). A Class IV felony is punishable by up to 2 years' imprisonment and 12 months' post-release supervision, a fine of $10,000, or both. § 28-105(1). See, also, Neb. Rev. Stat. § 28-2204.02(4) (Reissue 2016); § 28-105(6) (where person sentenced to imprisonment for Class IIA felony is also sentenced concurrently or consecutively to imprisonment for Class IV felony, person is not subject to post-release supervision).

The district court sentenced Svoboda to 5 to 10 years' imprisonment for burglary, 1 to 2 years' imprisonment for possession of burglar's tools, and 1 to 2 years' imprisonment for possession of a controlled substance, with the burglary and possession of burglar's tools sentences running concurrently with one another and the possession of a controlled substance sentence running consecutive to the other two sentences. The court gave him credit for 15 days of time served.

Svoboda's sentences were within the statutory ranges, but he argues that the district court should have imposed sentences of probation. With respect to probation, Neb. Rev. Stat. § 29-2260(2) (Reissue 2016) provides:

> Whenever a court considers sentence for an offender convicted of either a misdemeanor or a felony for which mandatory or mandatory minimum imprisonment is not specifically required, the court may withhold sentence of imprisonment unless, having regard to the nature and circumstances of the crime and the history, character, and condition

of the offender, the court finds that imprisonment of the offender is necessary for protection of the public because:

(a) The risk is substantial that during the period of probation the offender will engage in additional criminal conduct;

(b) The offender is in need of correctional treatment that can be provided most effectively by commitment to a correctional facility; or

(c) A lesser sentence will depreciate the seriousness of the offender's crime or promote disrespect for law.

Whether probation or incarceration is ordered is a choice within the discretion of the trial court, whose judgment denying probation will be upheld in the absence of an abuse of discretion. *State v. Senteney*, 307 Neb. 702, 950 N.W.2d 585 (2020).

During the sentencing hearing, the district court spoke directly to the exclusionary factors found in § 29-2260(2). The court noted Svoboda's lengthy prior criminal history. The court also noted that Svoboda had been given probation for a prior burglary and "[s]quandered it." The court found that there was a likelihood that Svoboda would reoffend if placed on probation and that placing him on probation would depreciate the seriousness of his crimes and promote a disrespect for the law. The court properly applied the statutory guidelines in denying probation and did not abuse its discretion in that regard.

Svoboda also argues that the district court abused its discretion by failing to adequately consider mitigating factors that would have supported more lenient sentences, failing to consider his rehabilitative needs, and giving improper weight to his prior criminal history. When sentences imposed within statutory limits are alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering well-established factors and any applicable legal principles. *State v. Greer*, 312 Neb. 351, 979 N.W.2d 101 (2022). When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

According to the PSI report, Svoboda, age 52 at the time of his interview with probation, has a GED. He was unemployed at the time of the interview. He has a lengthy prior criminal history, including multiple convictions for burglary (two of which were later set aside, resulting in a plea to a misdemeanor charge), as well as convictions for theft, possession of a controlled substance, habitual criminal findings, terroristic threats, and other crimes. He has been placed on probation before, with his most recent probation (for a burglary in 2013) being revoked. Svoboda's score on the Level of Service/Case Management Inventory placed him in the overall very high risk range, and the Simple Screening Instrument indicated a moderate to high risk level for substance misuse and the need for further evaluation. The Standardized Risk Assessment Report Form for

substance abuse offenders he completed reflected a high risk for recidivism. He completed a Mental Health Screen indicating a need for further intervention and mental health support.

The district court's comments at the sentencing hearing reflected that it had carefully reviewed the PSI report and considered all of the relevant factors with respect to Svoboda and the particular circumstances of this case. Based upon this record, we can find no abuse of discretion by the court in the sentences imposed.

*Ineffective Assistance of Counsel.*

Svoboda assigns that his counsel was ineffective for failing to ensure that he understood the plea agreement, failing to clarify the plea agreement on the record based on Svoboda's understanding of the agreement, not reviewing the PSI report with him prior to sentencing, not providing the court with documentation of his efforts at treatment, and not clarifying his criminal history and convictions that had been set aside. He is represented on direct appeal by different counsel than trial counsel. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Warner*, 312 Neb. 116, 977 N.W.2d 904 (2022). Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *State v. Thomas*, 311 Neb. 989, 977 N.W.2d 258 (2022).

When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *State v. Figures*, 308 Neb. 801, 957 N.W.2d 161 (2021). General allegations that trial counsel performed deficiently or that trial counsel was ineffective are insufficient to raise an ineffective assistance claim on direct appeal. *State v. Weathers*, 304 Neb. 402, 935 N.W.2d 185 (2019). In order to know whether the record is insufficient to address assertions on direct appeal that trial counsel was ineffective, appellate counsel must assign and argue deficiency with enough particularity (1) for an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) for a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court. *State v. Devers*, 306 Neb. 429, 945 N.W.2d 470 (2020). An ineffective assistance of counsel claim made on direct appeal can be found to be without merit if the record establishes that trial counsel's performance was not deficient or that the appellant could not establish prejudice. *State v. Kipple*, 310 Neb. 654, 968 N.W.2d 613 (2022).

Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Warren*, 312 Neb. 991, 982 N.W.2d 207 (2022). In a plea context, deficiency depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). When a conviction is based upon a plea of no contest, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for

the errors of counsel, the defendant would have insisted on going to trial rather than pleading no contest. *State v. Thomas, supra*. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*.

First, Svoboda asserts that his trial counsel was ineffective for failing to ensure that he understood the plea agreement and for failing to clarify the plea agreement on the record based on Svoboda's understanding of the agreement. He claims he understood that, in addition to the terms discussed during the plea hearing, the plea agreement provided for the dismissal of the possession of a controlled substance charge of the second amended information once he entered pleas to the charges in the Otoe and Cass County cases. He notes the off-the-record discussion he had with his trial counsel during the plea hearing, after which his counsel clarified the details of the agreement with respect to the habitual criminal enhancements. Svoboda argues that he was prejudiced because his attorney did not clarify on the record Svoboda's understanding of the agreement with respect to the possession of a controlled substance charge. He does not state that he told his attorney of his alleged understanding of the plea agreement with respect to the possession of a controlled substance charge.

The details of the plea agreement were discussed at length on the record during the plea hearing. Svoboda was given time to speak privately with his attorney. The terms discussed on the record do not suggest in any way that dismissal of the possession of a controlled substance charge in this case was part of the plea agreement. The record reflects that in exchange for Svoboda's pleas of no contest to burglary, possession of burglar's tools, and possession of a controlled substance in this case, as well as his pleas to possession of a controlled substance charges in Otoe and Cass Counties, the habitual criminal enhancements would be dropped in this case, enhancement would not be pursued in the Otoe and Cass County cases, and the State would also dismiss a county court case from which the possession of a controlled substance charge in this case originated.

Throughout the plea hearing, Svoboda expressed his intent to enter pleas to all three charges in this case. He confirmed his understanding of the plea agreement as expressed on the record, as well as his understanding of the possible penalties for the three charges absent the habitual criminal enhancements. Following the lengthy discussion of the details of the plea agreement, Svoboda expressed his intent to enter pleas of no contest to all three charges of the second amended information; he did so again following the State's recitation of the factual basis, after which, the district court accepted his pleas and found him guilty of all three charges. At no point did Svoboda attempt to withdraw his pleas based on his alleged understanding that the possession of a controlled substance charge would be dismissed.

Svoboda argues that other than the standard plea colloquy, the district court did not "delve into the attorney-client relationship." Brief for appellant at 24. He also notes that he did not "complain to the Court about his counsel," and he argues that an evidentiary hearing is required to resolve this claim of ineffective assistance of counsel. *Id.* However, the record shows that the district court discussed Svoboda's satisfaction with his attorney with him twice during the plea hearing, and during sentencing, Svoboda expressed that his attorney had been "a really good lawyer to [him]." The State again asks us to take judicial notice of the record of the plea hearing in the Otoe County case, which occurred about a week after the plea hearing in this case. We judicially notice that while Svoboda had a different attorney representing him in Otoe County, at

- 12 -

the plea hearing in that case he expressed satisfaction with the "global plea agreement, meaning the plea agreement among the other counties as well" and the work of his attorneys in connection with it. The record refutes Svoboda's arguments with respect to the plea agreement. See *State v. Vanness*, 300 Neb. 159, 912 N.W.2d 736 (2018) (finding ineffective assistance of counsel claim refuted by defendant's statements to court during plea colloquy).

Svoboda also assigns that his trial counsel was ineffective in not reviewing the PSI report with him prior to sentencing and not providing the court with documentation of his efforts at treatment. His arguments with respect to these assigned errors are also refuted by the record. At the sentencing hearing, the district court asked Svoboda and his attorney about the PSI report. In response, Svoboda's attorney confirmed he had an opportunity to review the report, and Svoboda indicated he had an opportunity to speak with his attorney about the contents of the report. Svoboda and his attorney both denied being aware of any additions, corrections, or deletions that needed to be made to the report. The fact that Svoboda had been in and needed further treatment for substance abuse issues was brought to the court's attention during the sentencing hearing. And, Svoboda's need for further evaluation in this area was also reflected in the PSI report. These assignments of error fail.

Finally, Svoboda assigns that his trial counsel was ineffective in not clarifying his criminal history and convictions that had been set aside. The PSI report included the fact that Svoboda's 1988 burglary convictions in Hamilton County were set aside in 2003. At the November 2021 status hearing in this case, the district court was presented with information showing that following postconviction relief granting a new trial in the 1988 burglary case, Svoboda pled to a misdemeanor of theft by unlawful taking. At sentencing in this case, the court stated that it had reviewed the PSI report. Even if the court did not consider the fact of the set aside of the 1988 burglary convictions and subsequent misdemeanor plea, the law invests a trial judge with a wide discretion as to the sources and types of information used to assist him or her in determining the sentence to be imposed within statutory limits. See *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019) (finding court did not consider improper sentencing factors when it considered facts underlying certain dismissed charges). We have already determined that the court did not abuse its discretion in sentencing Svoboda in this case. He has not shown that he was prejudiced by his trial counsel's failure to "highlight" in his arguments at sentencing the fact that Svoboda's 1988 burglary convictions were set aside on postconviction and eventually resolved with a plea to a lesser charge. This assignment of error fails.

### CONCLUSION

The district court did not err in not ordering a drug and alcohol evaluation to be completed as part of the PSI or in not granting his request for a continuance to enable completion of residential treatment prior to sentencing. The court did not abuse its discretion in sentencing Svoboda. Svoboda's claims of ineffective assistance of trial counsel are refuted by the record. Accordingly, we affirm Svoboda's convictions and sentences.

AFFIRMED.