IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. SWANSON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

ROGER R. SWANSON, SR., APPELLANT.

Filed April 23, 2024.    No. A-23-230.

Appeal from the District Court for Douglas County: J RUSSELL DERR, Judge. Affirmed.

Katie Jadlowski, of Bartling Law Offices, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, and Nathan A. Liss for appellee.

PIRTLE, Chief Judge, and RIEDMANN and WELCH, Judges.

PIRTLE, Chief Judge.

## INTRODUCTION

Roger R. Swanson appeals the decision of the district court for Douglas County that dismissed his amended petition for postconviction relief without an evidentiary hearing. For the reasons that follow, we affirm.

## BACKGROUND

In 2014, N.D., who was then 9 years old, reported to her therapist that Swanson had sexually abused her when she was approximately 3 or 4 years old. According to N.D., the sexual abuse occurred between 2008 and 2012 at her mother's home when Swanson, born in 1953, was approximately 55 to 60 years old. N.D. expressed her belief that her mother had made her available to Swanson during this period in exchange for drugs. N.D. accused Swanson of touching the inside and outside of her vagina with his fingers, touching the outside of her vagina with his penis, touching her vagina with his lips, and forcing her to touch his penis with her fingers and lips.

- 1 -

On April 25, 2017, following the investigation of these allegations, Swanson was charged in the district court with first degree sexual assault on a child, a Class IB felony, and third degree sexual assault on a child, a Class IIIA felony. The charging document alleged that Swanson had subjected N.D. to sexual penetration and sexual contact on or about January 1, 2008, through December 31, 2012.

DISTRICT COURT PROCEEDINGS

On November 21, 2017, the district court scheduled Swanson's trial to begin on January 8, 2018. On December 28, 2017, 11 days before the trial, the State motioned for leave to endorse Sarah Cleaver and Debra Wesselman as witnesses. Then on January 3, 2018, 5 days before trial, the State amended its motion to include April Anderson. Swanson's trial was then held from January 8 to January 12.

At the trial, relevant to this appeal, the State called N.D. to testify along with the following witnesses: Sarah Spizzirri, an Omaha police officer; Anderson, a forensic interviewer; and Wesselman, N.D.'s therapist.

N.D. testified she first had contact with Swanson when she was 3 or 4 years old while she was living with her mother. During this time, she alleged that she was subjected to sexual abuse and identified Swanson as the perpetrator. At some point when N.D. was approximately 4 years old, she was removed from her mother's home and moved into foster care where she has remained with the same family ever since.

In May 2014, N.D. informed her therapist, Wesselman, about the sexual contact she experienced many years earlier. Wesselman reported the disclosure to the State and N.D. participated in a forensic interview at Project Harmony on May 22, 2014. N.D. proceeded to participate in two more interviews with Project Harmony on August 28, 2014, and April 28, 2016. The recordings from these interviews were entered into evidence and published at trial.

The information N.D. shared in these interviews was not entirely consistent between interviews or with her trial testimony. The inconsistencies included initially confusing Swanson with another man, Ronnie Graham, the timing of the events relative to N.D.'s age, the extent of her biological mother's involvement, whether Swanson ejaculated, and the extent of the sexual contact with Swanson. At trial, N.D. acknowledged these inconsistencies and stated that she did not feel comfortable disclosing everything initially but did a better job of relating the facts of what happened by the third interview.

Spizzirri's testimony mainly concerned the procedure utilized during the Project Harmony interviews and how N.D.'s interviews were completed. During her testimony, the three interviews were entered into evidence and published to the jury. Additionally, Spizzirri provided specific testimony concerning juvenile victims' tendency to provide "piecemeal disclosure" or "delayed disclosures." Specifically, she indicated it was common for children to disclose only "bits and pieces" of information at a time. She noted that while this tendency may make it appear that children are changing their stories, they are just remembering "different things or more details." She continued to explain that in her experience working with child victims of sexual assault, 50 percent of the cases involved delayed disclosures. She then provided her opinion as to whether specific questions from N.D.'s interviews were overly suggestive or leading. In opining that they

were not, she concluded that she did not have any concerns about N.D.'s interviews, or the questions asked during them.

Anderson was the forensic interviewer that conducted N.D.'s third interview on April 7, 2016. Anderson only conducted the third interview because the individual who conducted the first two, Suzie Mistry, no longer worked at Project Harmony. In Anderson's testimony, she defined "delayed disclosure" as being the tendency for most child victims of sexual assault to not share details of their abuse for months or even years afterward. She also discussed the ongoing concerns of asking children leading questions during forensic interviews. She noted that younger children are more susceptible to "suggestibility" which is essentially "how influenced they can be." She went on to describe certain factors that indicate a child might be more susceptible to suggestibility and concluded that she did not believe N.D. was very susceptible to suggestion. She also stated that it is not uncommon for a child victim to disclose inconsistent statements over time, especially if they had been abused multiple times. With this information in mind, she concluded that she did not have any concerns regarding her interview with N.D.

Wesselman is a therapist who has worked with N.D. since she was 5 years old. In her testimony, she described how people, particularly children, disclose information about sexual abuse differently. She explained that child victims of sexual assault may initially disclose the abuse very generally and get more specific as time goes on. She indicated this was the case with N.D. as she initially disclosed her sexual abuse and then included more instances of abuse at later points. Wesselman stated this was not uncommon and that N.D.'s disclosure "made sense" and that "[t]here wasn't anything that didn't make sense" about her disclosures.

At the close of the State's evidence, Swanson's counsel motioned for a directed verdict and to dismiss the charges for failure to make a prima facie case. The district court overruled both motions. At the close of evidence, Swanson's counsel renewed the motion to dismiss, which the district court overruled.

The jury found Swanson guilty on both charges and the district court accepted the verdict. On March 8, 2018, at the sentencing hearing, the district court sentenced Swanson to 40 to 41 years' imprisonment on the first degree sexual assault on a child charge, and 2 years' imprisonment on the third degree sexual assault on a child charge. The sentences were ordered to be served consecutively.

DIRECT APPEAL

With the same defense attorney representing him, Swanson pursued a direct appeal. In this appeal, Swanson assigned the following errors: (1) the evidence was insufficient to survive his first motion to dismiss the charge of first degree sexual assault of a child at the close of the State's evidence; (2) the evidence was insufficient to support the guilty verdicts for first degree and third degree sexual assault of a child; (3) the mandatory minimum sentencing scheme under which he was sentenced violated his constitutional right to be free from cruel and unusual punishment; and (4) the district court abused its discretion in imposing excessive sentences. On September 25, 2019, in a memorandum opinion, the Nebraska Supreme Court rejected all of Swanson's assignments of error.

On August 14, 2020, Swanson initiated this postconviction proceeding by filing a pro se verified motion for postconviction relief. Counsel was then appointed for Swanson, and he filed an amended postconviction motion on September 24, 2020, which contained several overarching claims.

Restated, Swanson's amended petition alleged that his trial and appellate counsel were ineffective for:

(1)     Failing to challenge the lack of specificity in the State's information as to when exactly the criminal conduct occurred, which violated Swanson's right to prepare and present a complete defense.

(2)     Failing to consult or obtain an expert specialized in the field of "delayed disclosure" of juvenile victims of sexual assault and failing to challenge the State's witnesses who testified about "delayed disclosures" without being certified as experts under Neb. R. Evid. 702 (Reissue 2016) and *Daubert/Schaefersman*. Swanson alleges these failures violated his right to due process, right to effective assistance of counsel, and right to prepare and present a complete defense.

(3)     Failing to consult and call N.D.'s biological mother as a witness, which violated Swanson's right to due process and right to prepare and present a complete defense.

(4)     Failing to consult and call Mistry and Graham as witnesses, who would have corroborated Swanson's defense by testifying that N.D. initially alleged Graham sexually assaulted her, not Swanson. Swanson alleges this violated his right to due process and rights to present and receive a complete defense.

(5)     Failing to request a continuance when the State provided 6 days' notice of its intent to call Anderson as a witness and failing to object and attempt to exclude her testimony. Swanson alleges this violated his right to prepare and present a complete defense and right to effective assistance of counsel.

(6)     Failing to request a continuance when the State provided 11 days' notice of its intent to call Wesselman as a witness and failing to object and attempt to exclude her testimony. Swanson alleges this violated his right to prepare and present a complete defense and right to effective assistance of counsel.

Swanson's petition then succinctly listed 11 additional actions and inactions by his trial and appellate counsel which he alleged constituted ineffective assistance of counsel:

(a)     Failing to object to Spizzirri's testimony about the validity of N.D.'s allegations against Swanson versus her allegations against Graham.

(b)     Failing to renew a motion to continue at trial which was filed to address a previous motion seeking *in camera* review of N.D.'s therapy records and failing to assign the court's denial of that motion as error in his direct appeal.

(c)     Failing to request an adequate accommodation at trial for Swanson's hearing impairment.

(d)    Failing to consult and obtain an expert in the area of eye movement desensitization and reprocessing or an expert in the field of children's susceptibility to suggestion, false memories, and memory implantation in the context of sexual abuse.

(e) Failing to consult or call as a witness the school nurse who N.D. originally disclosed the sexual abuse to.

(f)    Failing to object to the testimony of N.D.'s adoptive mother because the State did not endorse her as a witness.

(g)    Failing to depose or cross-examine Wesselman and N.D.'s adoptive mother about their communications with N.D. after her Project Harmony interviews.

(h)    Failing to object to N.D.'s adoptive mother's testimony where she stated that she did not believe she contributed to N.D.'s allegations against Swanson.

(i)    Failing to renew a motion in limine regarding N.D.'s post-traumatic stress diagnosis and failing to assign the issue as an error in the direct appeal.

(j)    Failing to subject N.D. to rigorous cross-examination.

(k)    And failing to file a notice of constitutional question on direct appeal which prohibited the appellate court from considering his argument regarding the unconstitutionality of the mandatory minimum sentencing scheme as applied in his case.

On November 23, 2020, the State motioned to dismiss Swanson's amended motion for postconviction relief. On February 21, 2023, the district court granted the State's motion and denied Swanson's amended postconviction motion without an evidentiary hearing. The district court's order is divided into five sections which can be summarized as follows:

(1)    Swanson's claim regarding the failure of his trial counsel to challenge the State's information failed because he did not provide any authority showing the challenge would have been successful.

(2)    Swanson's claims regarding his trial counsel's failure to pursue *Daubert/Schaefersman* certifications for the State's witnesses were meritless because he only provided conclusory allegations that the witnesses would not have qualified as experts if such motion was pursued.

(3)    Swanson's claims regarding his trial counsel's failure to obtain an expert witness in the field of child reporting of sexual assaults failed because he did not provide the name of an expert who should have been obtained or what testimony they would have provided. Additionally, Swanson's claims regarding the lack of objection to Spizzirri, Anderson, and Wesselman's expert testimony failed to provide sufficient information that the outcome of the case would have been different if Swanson's attorney had objected.

(4)    Swanson's claims regarding his trial counsel's failure to investigate and call certain witnesses and failure to request continuances prior to trial did not state what exculpatory evidence would have been gathered and how that evidence would have changed the outcome of the trial.

(5)    Swanson's claims regarding his trial counsel's failure to make objections, take depositions, provide hearing accommodations, object to a witness based on the endorsement, and properly cross-examine witnesses failed because Swanson only made conclusory statements and did not set forth what exculpatory evidence would have been

discovered and how that evidence would have changed the outcome of the trial. Further, the court stated the record refuted most of these allegations when considering the cross-examination conducted and the evidence produced by the State.

Following the district court granting the State's motion to dismiss his amended motion for postconviction relief, Swanson filed a notice of appeal on March 22, 2023.

## ASSIGNMENTS OF ERROR

On appeal, Swanson assigns the district court erred by granting the State's motion to dismiss his amended petition for postconviction relief and denying his amended petition for postconviction relief without an evidentiary hearing.

## STANDARD OF REVIEW

An evidentiary hearing on a motion for postconviction relief must be granted when the motion contains factual allegations which, if proved, constitute an infringement of the movant's rights under the Nebraska or federal Constitution. *State v. Saufley*, 29 Neb. App. 592, 956 N.W.2d 726 (2021). However, if the motion alleges only conclusions of fact or law, or the records and files in the case affirmatively show that the movant is entitled to no relief, no evidentiary hearing is required. *Id.*

A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact. *State v. Vanderpool*, 286 Neb. 111, 835 N.W.2d 52 (2013). Determinations regarding whether counsel was deficient and whether the defendant was prejudiced are questions of law that an appellate court reviews independently of the lower court's decision. *Id.* The court reviews factual findings for clear error. *Id.*

In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief. *State v. Jackson*, 32 Neb. App. 563 2 N.W.3d 203 (2024).

## ANALYSIS

Each of Swanson's arguments within his assignments of error pertain to the purported ineffective assistance he received from his trial and appellate counsel. To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense. *State v. Vanderpool, supra*. To show deficient performance, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. *Id.* To show prejudice, the defendant must demonstrate reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* The defendant has the burden in postconviction proceedings of demonstrating ineffectiveness of counsel, and the record must affirmatively support that claim. *Id.*

Restated, Swanson's appellate brief argues that his trial and appellate counsel committed several errors: (1) He failed to file a motion to quash, a motion for a bill of particulars, or object

in any manner to the State's use of a broad timeframe within its charging document;(2) He mishandled the area of expert testimony by allowing three of the State's witnesses to provide expert opinion without being certified as experts and also failed to consult or obtain expert witnesses to testify on behalf of the defense; (3) He failed to present Swanson with a complete defense by (a) failing to call N.D.'s biological mother as a witness; (b) by failing to interview Mistry; and (c) by failing to interview Graham; and (4) He failed to file for continuances after the State endorsed witnesses 6 and 11 days before trial. Lastly, Swanson's appellate brief attempts to incorporate the 11 additional claims of ineffective assistance of counsel mentioned previously by referencing his amended petition for postconviction relief.

INFORMATION

Swanson argues the district court should have granted him an evidentiary hearing on the issue of whether his trial counsel was ineffective for failing to challenge the State's information. He asserts the information should have been challenged on the basis that it utilized an overly broad timeframe from January 1, 2008, to December 31, 2012. He contends that his counsel's failure to challenge this timeframe violated his right to present a full and complete defense because the State had sufficient information to set forth a more specific timeframe.

An information must inform the accused with reasonable certainty of the crime charged so that the accused may prepare a defense to the prosecution and, if convicted, be able to plead the judgment of conviction on such charge as a bar to a later prosecution for the same offense. *State v. Theisen*, 306 Neb. 591, 946 N.W.2d 677 (2020). As such, an information must allege each statutorily essential element of the crime charged, expressed in the words of the statute which prohibits the conduct charged as a crime or in language equivalent to the statutory terms defining the crime charged. *Id.* Additionally, an information must provide sufficient particularity about the alleged crime which is vital to the preparation of a defense. See *State v. Beermann*, 231 Neb. 380, 436 N.W.2d 499 (1989).

Swanson contends the Supreme Court's holding in *State v. Beermann, supra*, required the State to utilize a more specific timeframe. In that case, the defendant was charged with four identical informations alleging the defendant committed four counts of first degree sexual assault. The informations alleged the defendant committed these crimes against an unnamed victim over the course of a 3-year period. Because there was no way for anyone to decipher which of the defendant's actions violated which information, the Supreme Court found that the defendant's right to be adequately informed of the charges against him had been violated. *Id.* Swanson cites this holding as a proposition which requires the State to allege precise dates within its charging documents when they can do so.

However, in *State v. Martinez*, 250 Neb. 597, 550 N.W.2d 655 (1996), the Supreme Court found where an information provides a timeframe which has a distinct beginning and an equally clear end within which the crimes are alleged to have been committed, it is constitutionally sufficient. In this finding, the court acknowledged the necessity of timeframe allegations, particularly, in informations alleging the sexual assault of children:

> Because sexual assaults on minors are typically unwitnessed, and because such assaults can leave little or no physical evidence, a prosecutor is often resigned to basing the State's case on the testimony of the minor victim. Yet, young victims are often unsure of the date

on which the assault or assaults occurred. A child who has been assaulted repeatedly may have no meaningful reference point of time or detail by which to distinguish one specific act from another. This is particularly true when a child has been assaulted on a regular basis and in a consistent manner. The more frequent and repetitive the assaults and the younger the victim, the more this problem is exacerbated, and the prosecutor's ability to prove specific acts through the victim's testimony decreases accordingly.

*Id.* at 600, 550 N.W.2d at 658.

In *Martinez*, the defendant was charged with sexual assault of a child with an alleged timeframe of July 1991 through September 1993. Based on the above-mentioned difficulties inherent in cases dealing with the sexual assault of children, the court found that this 2-year timeframe was constitutionally sufficient. *Id.* In this finding, the court stated:

It is preferable to allow the State to conduct one vigorous prosecution to protect a child rather than to bar any prosecution at all because of a child's natural mnemonic shortcomings. If, at the time the information is filed, the State knows of all facts and all possible charges arising from one transaction or series of transactions within a timeframe, and if nothing prevents the State from filing all charges in one information, then there is no reason why the State need attempt a series of prosecutions of one charge at a time rather than prosecute all charges at once.

*Id.* at 601, 550 N.W.2d at 658. The court also pointed out that the necessary drawback for allowing a liberal timeframe allegation was the proportionate increase in the defendant's protection against double jeopardy. *Id.*

In the matter at hand, we find the information was sufficient to provide Swanson adequate notice of the crimes he was charged with violating. Although the information filed against him utilized a 4-year timeframe from January 1, 2008, to December 31, 2012, there was only one information and it only referenced one victim. With the inherent difficulties presented by cases alleging the sexual assault of children, we determine the State's information was constitutionally sufficient.

With this finding, we also determine that Swanson's trial counsel was not ineffective for failing to challenge the information. Counsel is not ineffective for failing to make an objection that has no merit. See *State v. Allen*, 314 Neb. 663, 992 N.W.2d 712 (2023), *modified on denial of rehearing*, 315 Neb. 255, 995 N.W.2d 446. Because there was no basis for concluding that a challenge to the State's information would have succeeded, Swanson's counsel was not ineffective for not challenging it. Therefore, there is no indication that Swanson's allegations constitute an infringement of his rights under the Nebraska or federal Constitution. Accordingly, the district court did not err in denying him an evidentiary hearing on this issue.

EXPERT OPINIONS

Swanson next argues the district court should have granted him an evidentiary hearing on the issues of whether his trial counsel was ineffective for allowing nonexpert witnesses to provide expert opinion and for failing to consult or obtain expert witnesses to testify on behalf of the defense.

The first issue of whether Swanson's counsel was ineffective concerns the unchallenged testimony of Spizzirri, Anderson, and Wesselman regarding "delayed disclosures," the propensity of children to delay their disclosures, the appropriateness of questions utilized in N.D.'s interviews, and their perceptions of N.D.'s susceptibility to suggestion.

Swanson's argument on these issues can be further divided into two subcomponents: (1) His counsel was ineffective for not filing a *Daubert/Schaefersman* motion prior to trial and (2) His counsel was ineffective for not objecting to the testimony at trial. For these issues, we note that Swanson's amended petition for postconviction relief argued that his trial counsel was ineffective for not objecting to or challenging the testimonies of Spizzirri, Anderson, and Wesselman because they were not certified as experts. However, there is no requirement that the State must certify experts in criminal proceedings. See *State v. Figures*, 308 Neb. 801, 957 N.W.2d 161 (2021) (while Neb. Rev. Stat. § 29-1602 (Reissue 2016) mandates that State endorse list of witnesses known to it, it does not require that State highlight witness' expert status).

Instead, four preliminary questions must be answered in order to determine whether an expert's testimony is admissible: (1) whether the witness qualifies as an expert pursuant to Neb. Rev. Stat. § 27-702 (Reissue 2016); (2) whether the expert's testimony is relevant; (3) whether the expert's testimony will assist the trier of fact to understand the evidence or determine a controverted factual issue; and (4) whether the expert's testimony, even though relevant and admissible, should be excluded in light of Neb. Rev. Stat. § 27-403 (Reissue 2016) because its probative value is substantially outweighed by the danger of unfair prejudice or other considerations. *State v. Greer*, 312 Neb. 351, 979 N.W.2d 101 (2022).

Section 27-702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

Because there is no obligation to certify witnesses as experts in criminal cases, we read Swanson's argument to take issue with his trial counsel's failure to challenge Spizzirri, Anderson, and Wesselman's qualifications as experts in the fields of delayed disclosures and interview techniques for child victims of sexual assault.

Operating within that framework, for the first sub-issue, we determine that Swanson fails to show a reasonable probability that Spizzirri, Anderson, and Wesselman would not have qualified as experts if a pretrial *Daubert/Schaefersman* motion had been filed. For the second sub-issue, we conclude there was sufficient foundation laid for each of the witnesses to qualify as experts in the applicable fields. Therefore, Swanson is unable to show that he suffered prejudice based on his counsel not challenging the witnesses' testimony.

We believe that if challenged in pretrial motions, Spizzirri, Anderson, and Wesselman would have been found competent to provide expert testimony concerning interview techniques for child victims of sexual assault and their propensity to delay their disclosures. Before admitting expert opinion testimony under rule 702, a trial court must determine whether the expert's knowledge, skill, experience, training, and education qualify the witness as an expert. *State v. Braesch*, 292 Neb. 930, 874 N.W.2d 874 (2016).

Spizzirri has worked for the Omaha police department for over 20 years. During that time, she spent 13 years working in the police department's child victim and sexual assault unit and

currently works in the domestic violence unit. While Spizzirri was in the child victim and sexual assault unit, she was personally involved with approximately 1,500 forensic interviews.

At trial, she explained that she was trained in how to conduct forensic interviews with children. This training involved yearly week-long sessions that taught her how to ask questions to young children, how not to ask questions, and other basic interviewing techniques. She discussed how she was trained to ask children open-ended questions to avoid suggesting any answers. This practice was particularly important for younger children, who she described as "more susceptible" to suggestion. To further avoid suggesting answers, Spizzirri explained that she was trained "to let the child speak and explain as much as [they] can without interrupting or leading them in a certain way."

Spizzirri also discussed her experience with not being able to pursue criminal prosecutions because the initial information received from a child victim was insufficient. She stated that those situations were common and when they occurred, she ensured the child received ongoing treatment. Then if the child started to disclose more abuse in therapy, she would conduct a followup interview with them. She testified that, in her experience, it is common for children to make more disclosures after participating in therapy and that she had been involved in many cases where criminal prosecution could not begin until those later disclosures were made.

Anderson spent 16 years working for Project Harmony and has a master's degree in social work. Throughout her tenure at Project Harmony, she has conducted over 5,700 forensic interviews. She explained that she was familiar with research and literature regarding child development, child sexual abuse, signs and symptoms of child sexual abuse, and how children typically disclose sexual abuse. Additionally, she testified that during her time at Project Harmony she received multiple training courses on forensic interviewing. This included attending a training course at the national child advocacy center along with attending several national conferences.

During these trainings, Anderson learned to avoid using leading questions and instead use open-ended ones. She then discussed "suggestibility" and how younger children are more suggestible than older children. She stated that through her training, she learned to assess a child's suggestibility by factoring in their age, development, and disabilities.

Anderson also explained piecemeal disclosure and how disclosure "is not an event, it's a process." She expounded on the topic stating that when children disclosure sexual abuse they typically go from nondisclosure, to disclosing small amounts in passing comments or behaviors, to actively disclosing the abuse to a family member or friend. She testified that children do not tell everything at one time, so the piecemeal is where they disclose bits and pieces over time. She continued to discuss how piecemeal disclosure often looks like children are changing their stories, but in reality, they are remembering different things in more or less detail. Anderson also discussed delayed disclosures and stated that most children who have been sexually assaulted do not tell anyone right away. Instead, they often wait months, years or even until adulthood. Wesselman is a licensed mental health therapist and specializes in the area of sexual abuse of children and adults. She has worked in various related fields since 1989 and has worked at the attachment and trauma center in Omaha since 2008. She stated that she attends yearly conferences regarding trauma and child development and often speaks during the conference. Additionally, she has taken classes and training on child development, has received training in neurobiology and how trauma is stored in

children and adults, has published three books on treating children with attachment trauma, and has been teaching and training other therapists for about 15 years.

Wesselman testified about her familiarity with the signs and symptoms displayed by victims of sexual abuse and the different ways victims disclose their abuse. She explained that children report abuse differently than adults and will disclose abuse "in little bits and pieces." She testified that children will only disclose abuse when they feel safe and there is no time limit on when that may occur. She went on to state that, in her experience, it is common for children to continue to provide more detailed information regarding their abuse as their treatment continues. She also explained "suggestibility" and stated that if a child is more outspoken and willing to disagree with adults, they will be less susceptible to suggestion.

Given their knowledge, skill, experience, training, and education, we conclude Spizzirri, Anderson, and Wesselman were qualified as experts in the relevant fields and thus permitted to give the testimony that they did. Therefore, we are unable to determine that there was a reasonable probability that the results of the proceedings would have been different had Swanson's counsel filed *Daubert/Schaefersman* motions prior to trial.

For the same reasons, we next determine that Swanson did not show a reasonable probability that objecting to the testimony at trial would have altered its outcome. The evidence of the witnesses' training and experience presented at trial laid the necessary foundation to qualify Spizzirri, Anderson, and Wesselman as experts in delayed disclosures and child victim interview techniques. Because this foundation established that they were qualified in these fields, objections to their testimony would have been unsuccessful. Therefore, Swanson is unable to show that he was prejudiced by his trial counsel not objecting to their testimonies.

Swanson next contends his trial counsel was ineffective for failing to obtain an expert witness to testify about the nature of children reporting sexual abuse. Specifically, he argues his trial counsel was deficient for not securing an expert familiar with "delayed disclosure," "suggestibility," and the standards for interviewing children reporting sexual assault.

The Supreme Court has made clear that in a motion for postconviction relief, a defendant is required to specifically allege what the testimony of potential witnesses would have been if they had been called at trial in order to avoid dismissal without an evidentiary hearing. *State v. Cullen*, 311 Neb. 383, 972 N.W.2d 391 (2022). Absent specific allegations, a motion for postconviction relief effectively becomes a discovery motion to determine whether evidence favorable to a defendant's position actually exists. *Id.* Swanson fails to identify an expert witness in the ascribed fields that should have been called to testify. Additionally, he fails to provide what information that potential expert witness would have testified to and how that testimony would have changed the trial's outcome. As such, we determine this claim fails.

We conclude that Swanson's arguments concerning his trial counsel's purported mismanagement of expert testimony fail. Accordingly, his allegations fail to constitute an infringement of his rights under the Nebraska or federal Constitution. Therefore, we conclude the district court did not err in denying him an evidentiary hearing on these issues.

FAILURE TO PRESENT COMPLETE DEFENSE

Swanson next argues the district court should have granted him an evidentiary hearing because he alleged sufficient facts to show that his trial counsel failed to present a complete

defense. In this argument, Swanson alleges his trial counsel was ineffective by failing to call N.D.'s biological mother as a witness at trial and failing to interview Mistry and Graham.

We determine that Swanson's trial counsel was not ineffective in failing to interview N.D.'s biological mother or call her as a witness at trial because there is no indication that he would have been successful in those attempts. While Swanson alleges that N.D.'s biological mother would have provided salient testimony concerning his innocence, at the time of trial, she was unable to be found. The record shows the State subpoenaed her on December 27, 2017, but was never able to locate her. Spizzirri testified that the Omaha fugitive task force made attempts to find her but was unsuccessful. In this vein, Swanson does not provide any information as to what further efforts his trial counsel should have taken to attempt to locate and interview N.D.'s biological mother. Based on this, we are unable to find that his trial counsel was deficient in not interviewing her and not calling her as a witness at trial.

We next determine that Swanson's trial counsel was not ineffective for failing to interview Mistry and Graham. Swanson asserts that if his trial counsel had interviewed them, he would have obtained exculpatory and impeachment evidence that N.D. originally identified Graham as the perpetrator. In *State v. Prado*, 30 Neb. App. 223, 967 N.W.2d 696 (2021), this court found a defendant was unable to prove that he was prejudiced by his counsel's failure to object to testimony when the testimony was cumulative of other evidence. An analogous situation is present here.

Swanson is unable to show that he was prejudiced by his counsel's failure to interview Mistry and Graham because the evidence he purports they would have provided was already presented at trial. At the trial, the jury viewed N.D.'s first forensic interview where she initially said that Graham was her abuser. Additionally, N.D. and Spizzirri brought this issue to the attention of the jury in their testimony. When N.D. was asked about Graham, she stated that he was "her mom's friend . . . [who] helped her." She went on to indicate that there was "no way" she was confusing Swanson with Graham. Spizzirri then acknowledged that N.D. initially accused Graham of the sexual abuse but stated that N.D. corrected herself within a short time. Spizzirri stated that it was "clear to [her] that [N.D.] had misspoke" when accusing Graham instead of Swanson. Further, because Swanson was aware of this information at trial, he had the opportunity to cross-examine N.D. and Spizzirri on the issue.

In sum, despite his trial counsel not interviewing Mistry and Graham, Swanson and the jury were aware that N.D. initially accused Graham of the sexual abuse. Therefore, the information Swanson alleges would have been gained if his trial counsel had interviewed Mistry and Graham was cumulative of other evidence presented at trial. Accordingly, we are unable to find that Swanson was prejudiced by his trial counsel not interviewing them.

We determine that these allegations fail to constitute an infringement of Swanson's rights under the Nebraska or federal Constitution. Therefore, we conclude that the district court did not err in denying him an evidentiary hearing on these issues.

MOTIONS TO CONTINUE

Swanson next argues the district court should have granted him an evidentiary hearing on the issues of whether his trial counsel was ineffective for not requesting continuances when the State endorsed Wesselman 11 days before trial and Anderson 6 days before trial.

Neb. Rev. Stat. § 29-1602 (Cum. Supp. 2022) generally requires the prosecution to endorse the names of all known witnesses in the information at the time it is filed, but permits the endorsement of additional witnesses up to and including 30 days prior to trial. *State v. Smith*, 292 Neb. 434, 873 N.W.2d 169 (2016). The purpose of this requirement is to give the defendant notice as to witnesses who may testify against him or her and give the defendant an opportunity to investigate them. *State v. Sandoval*, 280 Neb. 309, 788 N.W.2d 172 (2010). However, a trial court, in the exercise of its discretion, may permit additional witnesses to be endorsed within the 30 days before trial and even after the trial has begun, provided doing so does not prejudice the rights of the defendant. *State v. Smith, supra.* In the event of a late disclosure, the Supreme Court has indicated that a continuance is the appropriate remedy if it sufficiently cures the prejudice inflicted. See *id.*

Swanson asserts he was prejudiced by his trial counsel's failure to request continuances because it impacted his ability to present a meaningful defense to Wesselman and Anderson's testimonies. However, Swanson does not specify what additional information would have been obtained if his trial counsel had sought continuances and how that information would have impacted the outcome of his trial. Without any specific allegations pertaining to how he would have benefited from these continuances, we are unable to find that he was prejudiced by their absences. Therefore, we determine that Swanson's counsel was not ineffective for failing to request continuances upon the late endorsement of the State's witnesses.

### ADDITIONAL CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL

Swanson next asserts his trial counsel was ineffective in 11 additional ways. However, on these issues, his appellate brief directs us to the allegations within his amended petition for postconviction relief. In other words, his appellate brief does not argue these issues, but instead cites to the arguments made in his amended petition.

The Supreme Court has recently stated that for the purposes of briefs filed with the appellate courts, it does not encourage the practice of incorporating by reference any content material to a party's argument, particularly when such references are unclear, and any party who does incorporate by reference does so at the party's own peril. *State v. Garcia*, 315 Neb. 74, 994 N.W.2d 610 (2023). In discouraging this practice, the court cited several of its prior propositions concerning appellate briefs. *Id.* The court has previously held that to be considered by an appellate court, the party asserting the alleged error must both specifically assign and specifically argue the error in the party's initial brief. *Id.* Where an appellant's brief contains conclusory assertions unsupported by a coherent analytical argument, the appellant fails to satisfy such requirement. *Id.* Moreover, the court has held that, in both the criminal and postconviction context, an appellate court will not ordinarily scour the record in search of facts that might support an appellant's claim. *Id.*

In the matter at hand, we determine that Swanson's incorporations are insufficient. The sections of his amended petition that he attempts to incorporate into his appellate brief are merely conclusory factual allegations of ways that his trial counsel was ineffective. With this, Swanson provides no legal or analytical arguments that support his claims. Therefore, if we were to accept his incorporations we would be left without any citations to legal authority or propositions of law to guide our review.

In its appellate brief, the State summarized the problem that Swanson's attempted incorporation poses:

> [I]n order to address these 11 claims, the State would have to individually articulate each of these claims; retrieve and present all of the facts relevant to each claim; and provide the entire legal analysis for each claim. In other words, the State would effectively have to write Swanson's entire argument for him. We decline to do so.

Brief for appellee at 32.

We are presented with the same issue, and similarly decline to provide the entire legal argumentation for Swanson's additional 11 claims of ineffective assistance of counsel. Accordingly, we find these claims fail and the district court did not err in not granting an evidentiary hearing on them.

## CONCLUSION

We conclude the district court did not err in not granting Swanson an evidentiary hearing on his claims of ineffective assistance of counsel.

AFFIRMED.